ROOSEVELT ROGERS, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

455 S.W.2d 182.

Court of Criminal Appeals of Tennessee. March 25, 1970.

Certiorari Denied by Supreme Court May 18, 1970.

Hugh W. Stanton, Jr., James E. Eikner, Jr., Memphis, for plaintiff in error.

David M. Pack, Atty. Gen., Thomas E. Fox, Deputy Atty. Gen., Nashville, Phil M. Canale, Jr., Dist. Atty. Gen., F. Glen Sisson, Asst. Dist. Atty. Gen., J. L. Patterson, Asst. Dist. Atty. Gen., Memphis, for defendant in error.

## OPINION

MITCHELL, Judge.

The defendant Roosevelt Rogers, whom we refer to as the defendant or by name, was convicted in the Criminal Court of Shelby County, Tennessee, of unlawful carnal knowledge of a female child under twelve years of

age, the jury fixed the punishment at life imprisonment. His motion for a new trial was heard and overruled and his appeal perfected to this Court.

The facts may be seen from the following summary of the testimony.

Mary Jo Stewart testified she was eleven years of age, that on July 9, 1968, she was on the porch playing and the defendant called her in the house, then threw her on the bed. She described actions of the defendant which were indicative of unlawful carnal knowledge of her, after which she got up and went home where she laid down and went to sleep. She lived on the same road the defendant lived on, not too far away. She testified she had driven nails in the door with her father's hammer to keep the defendant from coming up there. That she was asleep and when she woke up the defendant was in the room. That the defendant raped her again, then he got up and ran out doors and sat on the porch. She stated he hurt her and she cried.

Otis Stewart, father of the child, testified that he was employed in building and construction work. That Mary Jo told him what happened to her on July 9, that she was thrown down and choked and dragged through the house and was assaulted. That Mr. Roosevelt tried to have dealings with her and hurt her. He knew the defendant Roosevelt Rogers who lived down the street from them, just one house between them. She said he grabbed her on the porch and snatched her in the door. She started crying and he choked her and hurt her. She had nailed the door to keep him from coming in, he came and tried to get her to open the door and he broke it open and

came in. She explained that he was trying to have intercourse with her.

Mr. Stewart testified he called the police, took his daughter to John Gaston Hospital where the doctor saw her, then he went to the sheriff's office. Otis Stewart testified he went to the jail at Miss Bennie Fowler's request where the defendant asked him would $75.00 make him drop the charges. He said he could make it worth more than that. Otis Stewart further testified Geneva Rogers, wife of the defendant, told him if he would drop the charges, she would pay him and he told her he didn't expect he could do it, and told her to come and talk to him, but she didn't come.

Lieutenant O. C. Kroening of the County Sheriff's Office testified he had been employed by the Sheriff's office, Detective Division, since October, 1964. On July 10, 1968, he investigated a complaint against the defendant whom he knew as Roosevelt Sanders. After ordering the victim to be transferred to John Gaston Hospital, and after interviewing the victim and her father, the nurse and the physician on duty at the hospital, he told the District car to attempt apprehension of Roosevelt Rogers, alias Sanders. He was not apprehended at that time. He went to defendant's residence several times looking for him. That he made a good faith effort to find the defendant but to no avail. In the early part of August, Lieutenant Kroening was notified the defendant was in custody in Belleville, Illinois, and he was returned to Memphis.

Dr. John Chism examined Mary Jo Stewart July 10, 1968, he said, "The examination revealed normal genitalia for an eleven year old girl before she had a men-

strual period. The hymen revealed it was ruptured, it appeared to be a fresh rupture, within a day or two; there was no active bleeding. The hymen had been perforated by something, it would take a penetration to cause something of this nature. If the patient was examined within a relatively short period after this happened you would find blood, if more time elapsed you probably wouldn't see blood. It is possible sexual intercourse could cause a rupture."

On cross examination the doctor testified the rupture could be by any foreign body from a coke bottle to a pencil. The extent of this tear would almost necessitate an entry of some kind from something. That it was a pretty significant rupture and tear. He could hardly visualize this tear being from just external trauma and not an entry. He testified you could have minor ruptures from something such as external trauma.

Virginia Stewart, mother of the victim Mary Jo Stewart, testified she did not exactly know her date of birth. She was born in January, in Mississippi. She didn't know what grade her daughter was in at Lakeview. When asked on cross examination if she could have been born in 1956, she answered, "yes." When asked if Mary Jo told her Roosevelt did not do this she said, "yes."

Roosevelt Rogers, defendant, testified he was 34 years of age, married, had six children, and has been married three times. He considered himself a friend of Otis Stewart, whom he had known for 15 years, they were neighbors. On July 9, 1968, he got up, went in the car over to Edith Milbrooks' about 8:30. That's about two miles distance. Edith Milbrooks and Clarence Milbrooks were there. Otis Stewart and Willie Lee Odell came.

That that's where they all go when they haven't anything to do, sit around and play cards and drink beer. He left Edith Milbrooks' about 5:30, went straight back home. His wife was working at that time, she got home about 5:30, about the time he got there. At Edith Milbrooks' they shelled butterbeans and drank beer, he stayed there all that day. She fixed lunch. Clint Darling was there, he lives there with Edith Milbrooks. He saw Mary Jo that evening when he got back home. She and his child were riding the bike out there up and down the street. He cautioned her to not go out on the highway. After his wife got home, she fed the four head of hogs and three hundred chickens. He did not leave there that night. Otis Stewart came down and sat on the porch, he was about drunk. Besides Otis, Alvin Hardy came. That he went to sleep about 9:30. That he left Memphis the next day because he did not want to be locked up every time he turned around. He did not want to be arrested any more on something he did not do. That his little girl told him what Stewart had done. He came back and picked up his wife and went to Mississippi then to St. Louis, where he was arrested August 10.

Before this happened he had talked to Otis about his little girl and told him he should make her go to school. She never did go to school except about six days in three weeks. She was running around out there, messing around and going on. That he did not offer Otis money to drop the charges, Otis asked him for the money to drop the charges. That he told Bennie Fowler to ask Otis if he was going to drop the charges.

Defendant testified he, Edith, and Clint Darling left Edith Milbrooks' place sometime before lunch between

9, 10, and 11, and went to pick up some butterbeans the white man gave them and came back to Edith's about 3:30 P.M.

The defendant testified he was not guilty of the charge, that he had never harmed Mary Jo Stewart in any way, that he had never had or attempted to have any sexual relations with her at any time. That he never assaulted her in any way.

Miss Bennie Fowler testified she is sixteen years old has three sisters Mary Jane, Bobbie and Linda. She knows Roosevelt Rogers and Otis Stewart and the Stewart family. Mrs. Virginia Stewart and Mary Jo Stewart are friends of her family. Mary Jo has been a guest at their house many times. Mary Jo Stewart told her Roosevelt didn't do it, that he didn't do anything to her. That Mary Jo asked her to write a note for her to Geneva Rogers, the defendant's wife, that he didn't bother her, that Otis "whopped" her and made her say it. That she wrote the letter as Mary Jo requested and read it to her and signed it.

Miss Bennie Fowler admitted she and the defendant had engaged in sexual intercourse many times, she did not know how long this relationship existed. That she was fourteen years old when her intimate relations commenced with defendant Roosevelt Rogers.

Bobbie Ann Fowler, age seventeen, a senior in Geeter High School, testified she has known the defendant Roosevelt Rogers for about three years. After this incident is supposed to have happened for which Roosevelt Rogers is on trial in this case, Mary Jo Stewart's brother made her mad and she heard Mary Jo say, "Mr. Roose-

velt hadn't taken anything from her, she let him do it and it was good and she would let him do it again."

Mrs. Edith Milbrooks testified she is married her husband's name is Clint Darling, who is now in Veterans Hospital. She had known defendant Roosevelt Rogers for about three years. She had been up in the courts two or three times for violation of the liquor laws.

That on July 9, 1968, which was a Tuesday, Roosevelt Rogers came to her place about 6:30 A.M. He and her husband were working together, they went to see about a job. That he helped shell beans at her house. Clint and Roosevelt left and were gone for about two hours to Whitehaven to see about a job. They left about 11:30 and returned about 2 or 2:15, helped shell beans, and left about 5:30 or 5:45. The defendant left with Clint and came back with Clint.

It is the contention of the State that the defendant Roosevelt Rogers did have unlawful carnal knowledge of Mary Jo Stewart, a female under twelve years of age.

It is the defendant's contention that he is not guilty, that he did not have unlawful carnal knowledge of the female in question, and that he never at any time assaulted or mistreated Mary Jo Stewart.

He insists on an alibi, that at the time the offense is alleged to have been committed, he was at another and different place and could not have committed the offense.

By the testimony of Miss Bennie Fowler and Miss Bobbie Ann Fowler the defendant sought to contradict the prosecution witness Mary Jo Stewart on the ground of prior statements inconsistent with the testimony she gave concerning material facts about the commission of

the offense. This contradicting testimony was heard by the jury, and rejected as the jury had a right to do. Clearly these were questions for the jury to decide and are foreclosed by the verdict. Turner v. State, 188 Tenn. 312, 219 S.W.2d 188; Smith v. State, 205 Tenn. 502, 327 S.W.2d 308.

By the testimony of other witnesses introduced in behalf of the defendant he tried to show that the prosecutor, Otis Stewart, made an effort to extort money from the defendant in turn for his "dropping the charge."

This theory was rebutted by the State by the rebuttal testimony of Otis Stewart and Lieutenant Kroening of the Sheriff's Department who testified that Otis Stewart reported to him that the defendant and his wife and friends had importuned the prosecutor Stewart on the subject of dropping the charges for pay. Lieutenant Kroening advised Otis Stewart to "'play along with them" in an effort to discover what would be offered and by whom so that he could discover whether any bribery was attempted.

Likewise, the jury by its verdict rejected the defendant's theory and the verdict being approved by the trial court accredited and established the State's theory. Cooper v. State, 123 Tenn. 37, 138 S.W. 826; McBee v. State, 213 Tenn. 15, 372 S.W.2d 173.

The defendant's assignments of error are here considered in the order in which they appear in his brief.

Assignment No. I is to the effect that the verdict of the jury is contrary to the law and the evidence. And that the verdict of the jury is not supported by the evidence.

■ ■ This assignment challenges the legality and sufficiency of the evidence, therefore in reviewing the

evidence under it, we are bound by the rule, stated and restated over and over by our Supreme Court, and this Court, that a jury's verdict of guilt, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in the evidence in favor of and establishes the State's theory of the case. Under such a verdict, the presumption of innocence, which the law accords an accused prior to conviction, disappears and is replaced by a presumption of guilt which puts upon him the burden of showing upon appeal that the evidence preponderates against the verdict and in favor of his innocence. We may review the evidence only to determine whether it preponderates against the verdict and, in doing so, we must take the verdict as having established the credibility of the State's witnesses. The verdict will be disturbed on the facts only if the evidence clearly preponderates against it and in favor of the innocence of the accused. Gann v. State, 214 Tenn. 711, 383 S.W.2d 32; Holt v. State, 210 Tenn. 188, 357 S.W.2d 57; Gang v. State, 191 Tenn. 468, 234 S.W.2d 997; Gulley v. State, 219 Tenn. 114, 407 S.W.2d 186; Jamison v. State, 220 Tenn. 280, 416 S.W.2d 768; Webster v. State (Tenn. Cr. App.), 425 S.W.2d 799; Brown v. State (Tenn. Cr. App.), 441 S.W.2d 485.

We adhere to the rule that the credibility of the witnesses and conflicts in the testimony are all settled by the verdict of the jury. Hargrove v. State, 199 Tenn. 25, 28, 281 S.W.2d 692, 694; Morrison v. State, 217 Tenn. 374, 397 S.W.2d 826, 400 S.W.2d 237.

Assignment No. II is that the Court erred in his charge to the jury on the subject of "Flight."

On this subject the Court's charge to the jury is as follows:

"If you should find from the evidence in this case, beyond a reasonable doubt, that the defendant fled, you may consider this fact of flight along with all the other facts and circumstances in the case in determining the guilt or innocence of the accused. The flight of a person accused of crime is a circumstance which when considered together with all the facts of the case may justify the inference of the accused's guilt. The inference thus raised, however, is rebuttable and not conclusive, since an innocent person may take flight and flight may be explained by proof offered or by the facts and circumstances of the case."

The defendant testified he left Memphis the next day, because he did not want to be arrested anymore for something he did not do. That he took his wife and went to Mississippi and then to St. Louis. Lieutenant Kroening testified he made an unsuccessful effort to find the defendant in his home community. We think the foregoing instruction by the Court to the jury was reasonable, fair and proper in order that the jury might know how to consider the evidence on this subject.

22A C.J.S. Criminal Law § 625, on the subject of Flight is as follows:

"Thus, because flight or attempted flight may bear on the intent, purpose, or consciousness of guilt of accused, or because it may tend to connect accused with the commission of the offense charged, it is admissible in evidence as a fact which may be considered by the jury, or the judge sitting as both judge and jury, and from which an inference may be drawn, in connection with other circumstances and in the absence of an explanation of the reasons or motive that

prompted it, that the accused person is guilty. This is true whether the other evidence of guilt is direct or circumstantial, even though at the time of accused's flight he had not been accused of the offense, and even though it tends to show other offenses against the criminal law, as considered infra sec. 687. For the same purpose, the events and circumstances connected with the flight of accused are equally admissible.

"The law makes no nice or refined distinction as to the manner or method of a flight; it may be open, or it may be a hurried or concealed departure, or it may be a concealment within the jurisdiction. However, it takes both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or a leaving of the community for parts unknown, to constitute flight."

We find no prejudice resulted to the defendant and no error was committed by the Court in giving this charge on flight.

Assignment No. III is that the Court erred in charging the jury that:

"The Court instructs the jury that if it is developed from the testimony that there are witnesses who have within their knowledge material and pertinent facts concerning the matter under investigation who are under the control of one of the parties and the relations of these witnesses with one of the parties are such that they would naturally favor that party, and that party fails to call them without reasonable explanation of their failure to do so, the jury will be warranted in inferring that their testimony would not be favorable to the party failing to call the witness."

In considering this assignment we are of the opinion that the Court correctly instructed the jury under the rule set out in Wharton's Criminal Evidence Volume 1, page 268 that:

"The failure to call a witness who could testify to material facts will give rise to adverse presumptions or inferences that the testimony of such person would be unfavorable to the party who has not called him if the witness is available to the party against whom the presumption will operate but is not available to the adverse party."

■ The charge of the Court, here assigned as error, is so broad and so general, and leaves it to the jury to determine whether facts exist which would justify application of the rule, that we are unable to find any way in which the defendant could be prejudiced by this correct statement of the law.

Assignment No. IV is that the Court erred in his charge to the jury on the subject of an alibi as follows:

"The word Alibi means elsewhere, and where the proof in the case fairly raises the defense of an alibi and there is a reasonable doubt from the whole body of the proof as to the presence of the defendant at the time, near the place where the crime was committed, then the defendant would be entitled to a verdict of not guilty. If the proof of an alibi in this case, taken in connection with all the other proof, raises a reasonable doubt in your minds as to whether or not the defendant was present and committed the crime charged, then you should acquit the defendant. The law says that the defense of an alibi should be received by the Jury discretely and cautiously because it is a defense

that is easily manufactured or fabricated. But it is for the Jury to say whether the defendant was or was not present when the alleged offense was committed, and whether he did or did not commit the same, and this you must fairly and impartially determine from the whole body of the proof."

The Public Defender in his excellent brief and persuasive argument has cited Legere v. State, 111 Tenn. 368, 77 S.W. 1059 (1903) in which the Supreme Court reversed the trial court and held that the charge on alibi to be error. In that case the Court also held it was error for the trial judge to refuse to exercise his discretion and allow defendant's counsel time before adjournment to prepare affidavits on misconduct of the jury in separating, laying ground for his motion for a new trial.

This Legere case cited Jefferson v. State, 3 Shannon's Cases, 330 which held as follows:

"It is argued that the criminal judge erred in his charge on the defense of alibi in this, that in charging the jury to scrutinize the alibi testimony closely, he deprived the alibi defense of its true force. It is not denied that the charge on the defense of alibi is in strict conformity with the law, as it has been recognized and administered in the circuit and criminal courts ever since the case of Thompson v. The State, 5 Hum., 138. If it be true, as laid down in that case, and as it has ever since been held, that this defense is so liable to abuse from the ease with which it is concocted that it requires great strictness and attention on the part of the court and jury to avoid being frequently misled by it, then it is certainly eminently proper that juries should be put on their guard, and instructed to scrutinize the evidence to make out such

defense with close attention. Of course, this caution should be accompanied, as it was in this case, with the qualification that when such defense is clearly and fully made out, it is very conclusive."

The Jefferson case in 3 Shannon also cited Thompson v. State, 5 Humphreys 139-140, which held as follows:

"We can not say that the circuit judge erred in refusing a new trial; the whole matter was more fully before him than it can possibly be before us; and he was, therefore, much better enabled to judge of the propriety of granting a new trial then we can be; and we, therefore, feel no disposition to interfere with his discretion, especially as it is a case of misdemeanor, and in this respect more nearly approaching trials in civil than criminal cases, and, as such, not entitled to so strict a scrutiny by this court as it would be if the offence charged involved life or limb, or might result in confinement in the penitentiary. But furthermore, the defence of an *alibi* sought to be set up, though very conclusive, if clearly, certainly, and fully established, is one so liable to abuse, from the ease with which it is concocted when a design exists to practice a fraud on the State, and even when that design does not exist, by ignorant mistakes as to the particular hour and the lapse of time, that it requires great strictness and attention on the part of the court and jury to avoid being frequently misled by it; and the propriety of granting a new trial, where the offence has been positively proved, with a view of letting in that defence, depends so much upon attending circumstances, which can be under the view of the circuit judge only, that it is almost impossible for a court of error to act with safety upon it."

In Odeneal v. State, 128 Tenn. 60, 157 S.W. 419, the court approved a charge to the jury similar to that given by the trial judge in this Roosevelt Rogers case, where it held:

"Under his plea of not guilty the defendant also insists upon the defense of an alibi; that is, that he, the defendant, was not out at the place where the shot was fired and the deceased shot, at the time he was shot; but that he, defendant, was in the house, and did not know of the shooting until he heard the pistol fire, and then only by its report. The defense of an alibi is a perfect defense, when clearly and fully established by the proof; but, like every other fact in the case, it is left to you to say whether it has or has not been established. You should look to and examine the proof as to the alibi with strictness and caution, to avoid being misled by it, as it is early concocted, where there is a design to perpetrate a fraud on the State, or even where there is no such design, it is such an easy matter for witnesses to honestly mistake the day or the time to which they refer. But you will consider the proof of an alibi in connection with the other proof in the case, by the aid of your own experience and observation, and weigh it fairly and impartially, with an honest effort to reach the truth, and, if so weighing and considering all the facts and circumstances in the case, you have and entertain a reasonable doubt as to whether the defendant was out in front of the hall or house when the shooting took place, or was at that time in the house away from the place of the shooting, then you should acquit the defendant; but if you have no reasonable doubt but that he was out there when the shooting took place and is

guilty you should convict him of each of the three grades of homicide as you find him guilty.

"The instruction, taken all together, was correct. Thompson v. State, 5 Humph. (24 Tenn.) 138, 139; Chappel v. State, 7 Cold. (47 Tenn.), 92; Jefferson v. State, 3 Shan., 329, 333; Wiley v. State, 5 Baxt. (64 Tenn.), 662; Legere v. State, 111 Tenn. 368, 377, 77 S.W. 1059, 102 Am.St.Rep., 781. We do not approve the words 'when clearly and fully established by the proof,' as these words seem to indicate the necessity of proving the point beyond a reasonable doubt. Lawless v. State, 4 Lea. (72 Tenn.), 173, 181, 182; Owen v. State, 89 Tenn. 698, 16 S.W. 114. But these words are sufficiently qualified, by what is said in the subsequent part of this instruction on the subject of reasonable doubt, to prevent the jury from being misled thereby. The learned trial judge evidently used these words under the suggestion made in Jefferson v. State, supra, wherein it was said, after referring to the caution with which the jury should scrutinize the evidence upon the subject of alibi: 'Of course, this caution should be accompanied, as it was in this case, with the qualification that, when such defense is clearly and fully made out, it is very conclusive.' As laid down in Legere v. State, supra, it is sufficient if the evidence upon the subject of the alibi raises a reasonable doubt as to whether the accused was at the place of the homicide or at a different place. It is better not to treat the alibi as a defense at all, but simply as a point of evidence, on which the jury shall consider whether a reasonable doubt is raised in their minds as to the guilt of the accused. 'Alibi is not regarded by the courts as a defense in a strict and accurate meaning of

the term, but it is a mere fact shown in rebuttal of the State's evidence.' 2 Am. & Eng. Ency. of Law & Pr., 1357, 1358."

■ · We think the charge of the Court in this Roosevelt Rogers case is much more favorable to the defendant than is the language approved by our Supreme Court in the Odeneal case in 128 Tenn. 60, 64, 157 S.W. 419.

Assignment No. V is that the State did not prove the age of the victim to be under twelve (12) years. The testimony of Mary Jo Stewart was that she was eleven (11) years of age and in the fourth grade. That the offense was committed July 9, 1968. That she was born January 1, 1957.

She testified her brothers' and sister's names and ages were, "Rocky is three, Willie C. is five, and Linda Fay is eight."

On cross examination she testified she was ten (10) when this happened, that her birthday was January 21st.

Her mother did not remember her birthday nor did she know her age.

■ All the proof concerning her age is that she was under twelve (12) years of age at the time the offense was committed.

The verdict of the jury finding the defendant guilty of carnal knowledge of a child under twelve (12) years of age as charged in the first count of the indictment with the approval of the verdict by the trial court has determined the issues of fact.

It was stipulated by and between counsel for the State that the following motions were made orally by counsel for the defendant at the bench and were not taken by

the recording devices in the courtroom, and were over-ruled by the court.

"1. Counsel for defendant moved the Court to refrain from instructing the jury that the defense of alibi should be received with caution;

"2. Counsel for defendant moved the Court to refrain from instructing the jury that any inference of guilt could be drawn by the jury from evidence of the defendant's flight;

"3. Counsel for defendant moved the Court to refrain from instructing the jury that failure of the defendant to produce the minor daughter of the defendant as a witness could support an inference that the testimony of the minor witness would be unfavorable to defendant;

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED, the foregoing having been agreed and stipulated by and between counsel for the State and for defendant as accurately stating the proceedings before the Court upon the trial of this cause, that said stipulation be and it is hereby made a part of the Bill of Exceptions in this cause.

s/ William H. Williams

Judge"

The questions in the above motion were considered in the assignments of error.

All of the assignments of error are overruled and the judgment is affirmed.

We are grateful to the Public Defender for the zealous and important service he had rendered in this case in representing the defendant.

RUSSELL and HYDER, JJ., concur.