STATE of Tennessee, Appellee,

v.

Eddie C. WILLIAMS, Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

March 18, 1982.

Permission to Appeal Denied by Supreme Court June 1, 1982.

A. C. Wharton, Jr., Shelby County Public Defender, John Donald, at trial only, Charles E. Baucum, Asst. Public Defenders, on appeal only, Memphis, for appellant.

William M. Leech, Jr., Atty. Gen., Jerry L. Smith, Asst. Atty. Gen., Nashville, Hugh W. Stanton, Jr., Dist. Atty. Gen., W. Fred Axley and William E. Hightower, Asst. Dist. Attys. Gen., Memphis, for appellee.

## OPINION

SCOTT, Judge.

The appellant was indicted along with three co-defendants for the armed robbery of a convenience store. One co-defendant's case was severed. Another entered a plea of guilty. The appellant and the remaining co-defendant were tried jointly. The co-defendant was acquitted. The appellant was found guilty and received a sentence of fifteen years in the state penitentiary. Much aggrieved by his conviction, the appellant has presented four issues for our consideration. He does not challenge the sufficiency of the convicting evidence, but a brief recitation of the facts is necessary to place the issues in context.

On December 20, 1979, Roy E. Thompson was employed as the clerk/cashier at a 7-Eleven Market in Memphis. A man came in and asked for change for a ten dollar bill. After getting the change, he left but returned about five minutes later with another man. Both were armed. They came around behind the counter. Upon their instructions, Mr. Thompson opened the cash register for them. They took the money and left.

The market had a Cobra alarm system, which had recently been installed. Under this system one of the bills in the cash register activates a silent alarm when it is removed from the register. The police department is automatically notified and a computer flashes the location of the robbery before the police dispatcher. A ten dollar bill bearing serial number H10858092A, and bearing the initials and numbers "VRM 7/12/79" was the bait money which activated the alarm system.

Police officers responded immediately, arriving at the scene in less than sixty seconds. They obtained a description of one of the men from Mr. Thompson and a description and a license number of the automobile from another unnamed witness. As the dispatcher was announcing this information over the police radio, other Memphis police officers saw the car being described by the dispatcher. They positioned their car behind the car being described and followed it. At the time the automobile being sought was not violating any traffic ordinances. Just as the officers got behind the car, the appellant, who was seated in the left rear seat directly behind the driver, looked back and made a motion as though he was placing something under the seat. The officers turned on the blue lights at the intersection of Crump and Danny Thomas Boulevard, in an effort to stop the car. The car immediately turned north on Danny Thomas and sped away with the police in pursuit. A high speed chase ensued, and the car finally came to rest when it struck another police car used as a roadblock on Lauderdale.

During the chase the car slowed from four to seven times and the back door opened as though the occupants were about to bail out. Each time this occurred, the police car rammed their car in the rear to prevent anyone from leaving the car while it was in transit. On one of these occasions the appellant's leg stuck out the door as though he was going to get out.

After the car was stopped, the appellant and the other occupants attempted to flee but were subdued and arrested. The appellant had a gun in his belt and $36.00 in cash and $5.00 in food stamps in his left pocket. Among the money was the $10.00 bill used as bait money.

In his first issue the appellant contends that the police had no probable cause to chase the car or to stop them. In another issue the appellant contends that the search was unlawful because the arrest was unlawful. In support of both of these issues, the appellant complains because the witness who gave the description of the car to the police was never called to testify.

This case is remarkably similar to *Jones v. State*, 542 S.W.2d 392, 393 (Tenn. Cr.App.1976). In that case Jones' car was stopped after a police broadcast announced the armed robbery of a motel and, according to Jones, described the get away car as a white and red 1968 to 1970 Buick or Pontiac. The arresting officer attempted to stop Jones who was driving a white over red 1974 Ford. Jones argued that the arrest was illegal because the police broadcast was erroneous. The robbery victim testified that he gave no description other than the color and the fact that it was a late model car. All of the officers denied that the broadcast described the car by brand name.

About five miles from the robbery scene and ten minutes after the robbery, Jones' car was spotted. The police officer was unable to get the car to stop by use of his blue emergency lights, spotlight, and siren. Eventually, the car was stopped at an apartment complex and the four occupants were arrested. Jones was subsequently identified as the robber.

In that case this Court held that the officer acted legally in following Jones' car and attempting to stop him. After the occupants refused to comply with the officer's mandate to stop, he was justified in following the car and arresting the occupants when the opportunity presented itself. The Court noted that while the legality of a search does not depend upon its fruitfulness, the reasonableness of the officer's actions at that time and place, under those circumstances was fortified by the fact that he caught the robbers.

If the officer in *Jones* had probable cause to stop the vehicle, there can be no doubt that the officers in this case had probable cause. In this case in a matter of minutes the officers were able to spot the automobile a very short distance from the scene of the robbery. In addition to a description of the get away car, the officers were armed with its license number. The officers acted legally in following the car and attempting to stop it. When the car fled, the officers were justified in following it and arresting the appellant and the other occupants when the opportunity presented itself. As in *Jones,* the fact that the search was fruitful fortifies the reasonableness of these officers' actions.

█ The name of the person who gave the information to the dispatcher was never revealed in the record. The proof showed that the information regarding the car was given to the dispatcher by "a person who saw the holdup". The reasonableness of the officers' action and the legality of the arrest in this case does not turn upon the name of the person who transmitted the information to the officers. Frequently, police officers, upon arriving at the scene of a crime, are hurriedly given valuable information by an eyewitness. Based upon this information, hot pursuit results. Later, when the officers return to the scene, the eyewitness who gave the information may have long since departed. To require in these tumultuous circumstances that the officers stop and ascertain the name, address, and full identification of the informant is totally unreasonable. To do so would frequently negate the value of the information imparted to the officers. When the informant is an eyewitness, specific indicia of reliability or past reliable contact is not required. *United States v. Rollins,* 522 F.2d 160, 164 (2d Cir. 1975), citing *United States v. Burke,* 517 F.2d 377, 380 (2d Cir. 1975). Personal observation by the witness plus some corroboration by the police equals probable cause. *United States v. Rollins,* supra, at 165.

As our Supreme Court stated in *Jones v. State,* 161 Tenn. 370, 33 S.W.2d 59, 60 (1930):

The substance of these (statutory) provisions (allowing an officer to arrest without a warrant) is that an officer may lawfully proceed to arrest without a warrant any person when the officer has, with reasonable cause, been led to believe that the person has committed, is committing, or is about to commit a felony. It is essential to the protection of society that a wide discretion be vested in officers chosen to enforce our laws against felonies. It is impossible to define "reasonable cause" in terms to fit all cases arising. Each case must stand on its own facts. A narrow construction would open the way for the escape of desparate criminals and the defeat of justice. One *too* liberal would lead to the harassment of the innocent. But the officer may not be required to wait for assurance, for evidence which would convict; when circumstances fairly point to a felony it is his duty to act, and act promptly.

In this case the anonymous eyewitness' full description of the get away car was clearly based on personal observation. The officers were justified in looking for that particular automobile. When spotted the driver's obvious attempt to elude police provided sufficient corroboration of the eyewitness' tip. Therefore, we hold that the officers had probable cause to chase and eventually stop the automobile in which the appellant was riding. The arrest was lawful and the subsequent search of his person was likewise lawful. This issue has no merit.

█ In the next issue the appellant contends that the trial judge erred in refusing to grant a new trial when evidence was presented that the victim testified under duress by the Memphis Police Officers, and because pressure was brought upon him to testify that he recognized the appellant as one of the men who robbed him. Included as an appendix to the appellant's brief is an affidavit executed by Mr. Thompson which states:

I, Roy Elvis Thompson, first being duly sworn, do state that I was robbed by two

men December 20, 1979, while on duty at a 7/11 Store at 1041 Linden Avenue. I could not really identify or remember the faces of the men who robbed me. The police officers lead me to believe that the man I identified in the courtroom was the one who robbed me, but I do not know that he was in fact the same man. I testified that it was Eddie Williams who robbed me because the police pressured me to testify that way. I do not know who the men were who robbed me. I testified as I did under duress of police officers.

The motion for a new trial was heard and overruled on May 4, 1981. At the hearing on the motion on that date no evidence was elicited from Mr. Thompson. The foregoing affidavit was sworn to before a notary public on September 25, 1981, almost a month after the record was filed in this Court, and only three days before the appellant's brief was filed. Rule 24(a), T.R.A.P., prescribes the content of the record on appeal. Rule 24(e), T.R.A.P., provides authority for the correction or modification of the record to conform to the truth. This rule also requires the settlement of any differences regarding the accuracy of the record by the trial court, regardless of whether the record has already been transmitted to the appellate court. The affidavit in this case was never submitted to the trial judge.

Rule 24(g), T.R.A.P., provides:

Nothing in this rule shall be construed as empowering the parties or any court to add to or subtract from the record except insofar as may be necessary to convey a fair, accurate and complete account of what transpired in the trial court with respect to those issues that are the bases of appeal.

In *Dearborne v. State,* 575 S.W.2d 259, 264 (Tenn.1978), Chief Justice Henry, considering a petition to rehear because the court overlooked a fact which did not appear in the technical record, wrote:

We decide cases and controversies on the basis of the record as presented to us for our consideration, and not as they might, or should, have been presented.

The affidavit is not properly before this Court. A trial judge will not be placed in error for failing to consider something which was never presented to him. In addition, the affidavit is, at most, evidence which would tend to impeach the credibility of the victim as a witness. A new trial would not be granted upon such evidence. *State v. Baker,* 623 S.W.2d 132, 133 (Tenn. Cr.App.1981). This issue has no merit.

■ Finally, the appellant contends that the trial judge erred in instructing the jury on the inference of guilt which can be drawn from the circumstance of flight. He contends that this instruction should not have been given because the officer testified the car was being driven in a normal manner when they first spotted it. The appellant also contends the flight instruction was erroneous, since he was a passenger and not the driver of the fleeing car. He points out that he tried to get out of the car several times. By his theory, this conduct is susceptible to two interpretations. He could have been attempting to bail out to avoid apprehension as the officers contended, or because he did not want to participate in the flight.

■ It is elementary that the fact that a defendant, after the commission of a crime, fled from the vicinity where the crime was committed, with knowledge that he was likely to be arrested for the crime or charged with its commission, may be shown as a circumstance tending to indicate guilt. *Hall v. State,* 584 S.W.2d 819, 821 (Tenn.Cr. App.1979), citing 29 Am.Jur.2d (Evidence) § 280, p. 329. Any ex post facto indication by an accused of a desire to evade prosecution may be shown as one of a series of circumstances from which guilt may be inferred. *State v. Braggs,* 604 S.W.2d 883, 886 (Tenn.Cr.App.1980).

It is irrelevant whether the appellant was driving the get away car or riding therein. When the car was immobolized, all of the occupants, including the appellant, attempted to get out of the car and elude the officers. There was no proof that the appellant was an unwilling passenger in the

get away car. Rather, the presence of the proceeds of the robbery in his pocket when he was apprehended indicated his desire to flee rather than an innocent rider with a band of robbers. The fact that the car was originally being driven in a lawful manner, but fled when spotted by the police officers is another fact to which the jury could look to determine whether there was flight and what conclusion, if any, to draw from the flight. This issue has no merit.

Finding all of the issues devoid of merit, the judgment is affirmed.

CORNELIUS, J., and ARTHUR C. FAQUIN, Jr., Special Judge, concur.