IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 16, 2001 Session

## STATE OF TENNESSEE v. JOHN DAVID WHITE

**Appeal from the Circuit Court for Rutherford County**
**No. 49031     Terry Lafferty, Judge**

_____

**No. M2001-00336-CCA-R3-CD - Filed March 11, 2002**

_____

The defendant, John David White, was convicted by a jury in the Rutherford County Circuit Court for aggravated burglary, theft of property valued over $1,000, felony evading arrest, vandalism, and driving while his license was suspended. He was sentenced to a total of twenty-one years in the Department of Correction as a career offender. In this appeal, the defendant contends (1) that the trial court should have suppressed evidence obtained from the stop of his truck and (2) that the trial court erred in instructing the jury relative to flight from crime. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Michael J. Flanagan, Nashville, Tennessee, for the appellant, John David White.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Paul A. Holcombe, III, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The evidence reflects that Olene McCluskey returned to her Murfreesboro home on August 31, 1999, to discover that it had been burglarized. It appeared that a crowbar or like instrument was used to pry the backdoor open. A television set, VCR and cabinet, jewelry, guns, tools and other property totaling approximately $4,500 were missing.

The police developed the defendant as a suspect and conducted a surveillance of him in several unmarked police cars on September 8, 1999. Rutherford County Sheriff's Detective James Harrell said he checked their "in house" computer sometime earlier and determined that the defendant had been arrested on August 20, 1999, for driving on a suspended license, and he so advised the other officers. After a short period of surveillance and thinking that the defendant had

spotted them, Detective Harrell directed Rutherford County Sheriff's Detective Dan Goodwin to stop the defendant. Both detectives believed that their knowledge regarding the defendant's license justified a stop.

Detective Goodwin testified that he positioned his car head on to the defendant in the defendant's lane of traffic and that he turned on his siren and blue and white flashing lights. The defendant stopped his truck in front of Detective Goodwin for several seconds, then drove off the road and across a ditch into a yard. Detective Goodwin stated that he followed the defendant, who ultimately turned onto a driveway and drove toward a garage. Detective Goodwin said the defendant then veered and hit a chain-link fence, which stopped his truck. The defendant fled on foot but was apprehended nearby. Items stolen from Olene McCluskey were found in the truck.

## I. SUPPRESSION OF EVIDENCE

The defendant contends that his initial stop by the officers was without basis and violated the Fourth Amendment of the United States Constitution and article I, section 7 of the Tennessee Constitution regarding searches and seizures. His primary thrust is that the officers only knew that he had been arrested and that they should have checked to determine the status of his license at the time of the stop. He asserts that otherwise, the officers did not have a reasonable and articulable basis to suspect that he was violating the law. The state replies that the officer's knowledge of the defendant's earlier arrest would give rise to a reasonable suspicion that would justify his stop. It cites to State v. Yeargan, 958 S.W.2d 626, 631 (Tenn. 1997), in which our supreme court concluded that an officer, who observed the defendant operating a vehicle six months after having arrested the defendant for driving under the influence (DUI) and having been in court when the defendant was convicted of DUI and received a one-year license revocation, had reason to suspect that the defendant was driving without a license. We believe the state's reliance is misplaced. The fact that the officer in Yeargan knew that the defendant had his license revoked, witnessing it in court, is a far cry from merely knowing that a person has been arrested.

On the other hand, regardless of our view of the initial stop, we believe that the defendant's subsequent actions justified his arrest. At that point, an inventory search of the truck after it was impounded was justified. Unquestionably, after Detective Goodwin stopped the defendant, the defendant drove off the road to avoid the detective and ultimately knowingly damaged a chain-link fence. An unlawful stop or arrest does not immunize a person for subsequent conduct that justifies a stop or arrest. See, e.g., State v. Robert Lee Mallard, No. M2000-00351-CCA-R3-CD, Rutherford County (Tenn. Crim. App. Feb. 23, 2001); State v. George Wesley Harville, Jr., No. 01-C-01-9607-CC-00300, Sequatchie County (Tenn. Crim. App. Oct. 24, 1997). Moreover, the defendant abandoned the truck and fled the scene. Even if the defendant had not been arrested, it would have been reasonable for the officers to remove the truck from private property and impound and inventory it for safekeeping. Under the circumstances in this case, the evidence used by the state did not flow from the initial stop. The trial court properly allowed its use.

## II. FLIGHT INSTRUCTION

Petitioner complains about the trial court's instructing the jury regarding a person's flight justifying an inference of guilt. He contends that the instruction was unduly prejudicial to him regarding the aggravated burglary charge. He notes that any flight occurred on the day of his arrest, not on the day of the burglary. The state's reply does not particularly address this argument, although it asserts that any error was harmless.

The defendant relies upon this court's previous opinions reflecting that the charge of flight is applicable only if there is both a leaving the scene of the difficulty and a subsequent evasion or hiding out. See State v. Payton, 782 S.W.2d 490, 498 (Tenn. Crim. App. 1989); Rogers v. State, 2 Tenn. Crim. App. 491, 502, 455 S.W.2d 182, 187 (1970). He argues that in order to justify a flight instruction, there must be flight from the vicinity of the difficulty, not flight at some later time. To the contrary, our cases permit an instruction on flight when the defendant flees at a later time rather than immediately after the commission of the crime. See, e.g., Payton, 782 S.W.2d at 498 (approving the flight instruction for the defendant's flight when encountered by the police at his brother's duplex or a nearby yard later on the day of the offenses, which occurred at entry of the adjoining duplex); Rogers, 2 Tenn. Crim. App. at 501-02, 455 S.W.2d at 186-87 (affirming the flight instruction for the defendant's traveling out of state on the day after he raped the victim in his home and again in her house, which was on the same street). In State v. Williams, 638 S.W.2d 417 (Tenn. Crim. App. 1982), the defendant argued that the flight instruction was improper because he and co-defendants were not fleeing at the time the police encountered them. In that case, the defendant and others robbed a convenience store and left. Officers located the car, in which the defendant was a passenger, pursuant to a dispatched license plate number. The car was proceeding normally at the time the officers spotted it. After following the car for a brief period and observing the defendant place something under the seat, the officers attempted to stop the car, which sped off, and a chase ensued. This court observed that any indication after the crime of the defendant's "desire to evade prosecution may be shown as one of a series of circumstances from which guilt may be inferred." Id. at 421. Thus, the jury could properly consider the subsequent fleeing from the police as a circumstance indicating flight even though the car in which the defendant was riding was not fleeing at the time the police spotted it. Id. at 422. These cases indicate that the flight need not be from the crime scene immediately after the completion of the crime.

In any event, we note that items taken in the burglary were found in the defendant's truck. Therefore, the jury could reasonably infer that a motivation for the defendant's attempt to evade arrest was to thwart discovery of the stolen property. The trial court's instruction on flight was proper.

Based on the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, JUDGE

-3-