IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 23, 2019 Session

## STATE OF TENNESSEE v. ROSHAUN COLBERT

**Appeal from the Criminal Court for Knox County**
**No. 104464   Bobby R. McGee, Judge**

_____

**No. E2018-02062-CCA-R3-CD**

_____

On February 8, 2018, a Knox County jury convicted Roshaun Colbert, Defendant, on one count each of reckless endangerment, evading arrest, reckless driving, attempted tampering with evidence, and possession of drug paraphernalia. The trial court sentenced Defendant to a total effective sentence of twelve years. On November 14, 2018, the trial court vacated Defendant's conviction for reckless endangerment because reckless endangerment was not properly charged in the indictment as a lesser-included offense of aggravated assault. On appeal, Defendant argues that there was insufficient evidence to convict Defendant of attempted tampering with evidence and that the trial court erred in instructing the jury on flight. After a thorough review of the facts and applicable case law, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and TIMOTHY L. EASTER, JJ., joined.

Joshua Hendrick, Knoxville, Tennessee, for the appellant, Roshaun Colbert.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas White Spangler and Katherine C. Redding, Assistant Attorneys General; Charme P. Allen, District Attorney General; and Phil Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

On November 18, 2014, the Knox County Grand Jury indicted Defendant for aggravated assault in count one, evading arrest in count two, reckless driving in count three, violation of driver's license law in count four, tampering with evidence in count five, simple possession of a controlled substance in count six, possession of drug paraphernalia in count seven, violation of window tint law in count eight, and failure to provide proper evidence of financial responsibility in count nine. In count ten of the indictment, the Grand Jury charged Defendant with violating the criminal gang offense statute, pursuant to Tennessee Code Annotated section 40-35-121.

The case proceeded to trial on counts one, two, three, five, and seven on April 4, 2017, after the State entered a nolle prosequi as to the other counts in the indictment.

Lieutenant Kenneth Brian Bush testified that he was a patrol supervisor with the Knoxville Police Department ("KPD") east district. Lieutenant Bush explained that, on April 3, 2014, he was a sergeant with the KPD east district and was on duty at approximately 2:00 a.m. He traveled to the scene of a possible stabbing in the 2700 block of East Magnolia Avenue, parking in front of an apartment building. After checking on the stabbing victim, Lieutenant Bush walked around the building looking for witnesses, possible suspects, or other evidence. Lieutenant Bush testified that the parking lot behind the building was well-known for narcotics trafficking. Lieutenant Bush spotted Defendant sitting in his vehicle with the engine running. The vehicle's windows were very darkly tinted. Lieutenant Bush explained that he tapped on the driver's side window, and Defendant rolled it down approximately three-quarters of the way. Inside the vehicle, Lieutenant Bush observed Defendant in the driver's seat, a female in the front passenger seat, and a male in the back seat behind the driver.

Lieutenant Bush introduced himself and looked in the vehicle with his flashlight, where he saw two baggies in Defendant's lap in plain view. One baggie contained a green leafy substance, and the other baggie contained a white powdery substance. Lieutenant Bush stated that, based on his experience as a patrol officer, he recognized the sight and smell of the green leafy substance as marijuana and that he knew the quantity of each baggie was several grams. Lieutenant Bush testified that, when Defendant saw that Lieutenant Bush was a police officer, Defendant seemed "extremely nervous" and "very surprised." Lieutenant Bush asked for and received Defendant's identification card. Lieutenant Bush stated that he asked Defendant to remain where he was and to stay in the vehicle. Lieutenant Bush stepped "five or ten feet" away from the vehicle to seek assistance from another officer from the nearby scene of the stabbing. Lieutenant Bush

noticed some movement of the vehicle, so he approached the vehicle and reached for the driver's side door handle. When Lieutenant Bush was "one or two feet" from the vehicle, Defendant made a "very hasty turn to the right of the steering wheel and placed the vehicle in reverse and very quickly pressed the acceleration and backed up." Lieutenant Bush testified that Defendant's turning the steering wheel right and backing up caused the vehicle to "come to the left, which [was] right where [Lieutenant Bush] was standing." Lieutenant Bush "lunged to the left . . . in fear for [his] life." Lieutenant Bush testified that he then drew his service weapon.

Next, Lieutenant Bush explained that Defendant placed the car in "drive" and traveled westbound through the alleyway towards Harrison Street. Based on his training of speed evaluation, Lieutenant Bush estimated Defendant was traveling fifty miles per hour in the alleyway, where the posted speed limit was fifteen miles per hour. Lieutenant Bush testified that Defendant was "traveling at a high rate of speed, in a reckless manner, [and] did not stop at the intersection" of the alleyway with Harrison Street. At that point, Defendant crashed his vehicle in a grassy area, approximately one and one half blocks from the parking lot. Lieutenant Bush stated that, when he and the other officers arrived at the scene of the crash, all the occupants had fled. The officers towed Defendant's vehicle and, upon inspection, recovered two marijuana blunts in an ashtray, two cell phones, the vehicle owner's identification, joint rolling papers, and a baggie containing a white powder residue. Lieutenant Bush said that he recovered "several baggies." Lieutenant Bush testified that, after Defendant crashed the vehicle, there was only a trace amount of the white powdery substance left in one baggie, which was less than the amount he observed earlier when Defendant rolled down his window. Lieutenant Bush testified that he did not find the baggie containing the marijuana in the vehicle. Lieutenant Bush testified that officers found the backseat passenger from Defendant's vehicle and arrested him for public intoxication.

On cross-examination, Lieutenant Bush stated that he did not send the recovered baggie with the white powdery residue to the Tennessee Bureau of Investigation ("TBI") for testing because, based on his experience, there was an insufficient amount to test.

On redirect examination, Lieutenant Bush testified that the amount of the white powdery substance he initially observed would have been enough to send to TBI for testing.

Defendant testified that in the early morning of April 3, 2014, he was behind an apartment building located on Magnolia Avenue in Knoxville that was well-known for narcotics trafficking. Defendant stated that he was sitting in a four-door 1995 Toyota Camry with two other individuals. Defendant explained that he had some marijuana sitting in his lap that night, "probably a $10 sack[,]" which he was planning to smoke.

Defendant stated that, when the female passenger saw Lieutenant Bush approach the car, she asked Defendant to "pull off" because there was a warrant out for her arrest. Defendant testified that he refused to pull away because he did not want Lieutenant Bush to think he was "doing something." He stated that he rolled the window down when Lieutenant Bush knocked. Defendant said that Lieutenant Bush told him, "I ain't going to say nothing about the drugs in the car" and asked for Defendant's identification. Defendant claimed that he forgot the marijuana was sitting in his lap, so he did not understand Lieutenant Bush's reference to drugs. Defendant handed Lieutenant Bush his identification. When Lieutenant Bush told Defendant to place his hands on the steering wheel, Defendant complied. Defendant explained that he complied when Lieutenant Bush ordered him to roll down the backseat window where the male passenger was sitting. Lieutenant Bush asked Defendant and his passengers if they knew anything about the stabbing that had occurred nearby. Defendant stated, "I didn't want to be nowhere around all that so . . . when I rolled that back window down, [and Lieutenant Bush] got to grabbing that holster, man, all I did, [I] put it in reverse and drove straight back. I didn't turn that car nowhere near him." Defendant stated that he had no intention of hurting a police officer because "that's a life sentence to do something to an officer." Defendant testified that, after driving straight back, he turned his car, and then Lieutenant Bush drew his weapon. Defendant claimed that Lieutenant Bush yelled, "I['ll] shoot you. I['ll] kill you, motherf**ker. I['ll] kill you. Stop." Defendant stated that he ducked down when Lieutenant Bush drew his weapon.

On cross-examination, Defendant testified that he did not know anything about a white powdery substance in his car. He said, "I didn't have . . . no cocaine on my lap. I had the weed." Defendant stated that he did not move from his position until Lieutenant Bush reached for his weapon. He said that Lieutenant Bush never instructed him not to leave. Defendant testified that, from where Lieutenant Bush stood, he could not have seen whether Defendant failed to stop at the intersection of the alleyway and Harrison Street. Defendant said that he fled because he did not want to go back to prison.

On redirect examination, Defendant testified that he turned himself in to police approximately one to two weeks after the events of April 3, 2014. He stated that he waited to turn himself in until he had enough money to post bond.

The jury convicted Defendant of the lesser-included offense of reckless endangerment in count one; evading arrest in count two; reckless driving in count three; the lesser-included offense of attempted tampering with evidence in count five; and possession of drug paraphernalia in count seven. The trial court sentenced Defendant as a career offender to six years' incarceration in count one, six years' incarceration in count two, six months' incarceration in count three, and eleven months and twenty-nine days' incarceration in count seven. The trial court sentenced Defendant to twelve years'

incarceration in count five, running concurrent to all other counts, for an effective sentence of twelve years' incarceration.

Defendant filed a timely motion for new trial and amended motion for new trial. Following a hearing, the trial court vacated the jury's verdict in count one, reckless endangerment because reckless endangerment was not properly charged in the indictment as a lesser-included offense of aggravated assault.

Defendant now timely appeals.

## Analysis

### *Sufficiency of the Evidence*

Defendant asserts that his conviction for attempted tampering with evidence rests "solely on the proof that he ran away from police while in possession of drugs." Defendant contends that, while our appellate courts have not directly addressed whether flight in possession of evidence constitutes tampering, this court should look to neighboring states to compare their tampering statutes with Tennessee's to determine legislative intent. For example, several states, including Tennessee, have enacted tampering statutes based upon the Model Penal Code ("MPC"). However, some of these MPC states codify "removing" evidence as tampering, but Tennessee does not. *See* Tenn. Code Ann. § 39-16-503(a)(1) (2014). Thus, Defendant argues the legislative intent of the tampering statute was not to include removal of evidence as "tampering." Moreover, Defendant asserts that allowing removal of evidence to be considered "tampering" causes the tampering statute to "'piggyback' on a much less serious crime," in the present case, the crime of simple possession of a controlled substance.

The State responds that, viewed in the light most favorable to the State, the evidence was sufficient to support Defendant's conviction for attempted tampering with evidence. Specifically, the State argues that Lieutenant Bush initially observed on Defendant's lap two baggies containing several grams of drugs, and one of those baggies was later recovered after being substantially emptied of a white powdery substance. Therefore, the State contends that the jury was free to infer that Defendant destroyed the white powdery substance "with intent to impair its . . . availability as evidence in the investigation." *See* Tenn. Code Ann. § 39-16-503(a)(1) (2014). We agree with the State.

In evaluating whether the evidence was sufficient to support a conviction, this court must first examine the relevant statutes "to determine the elements that the State must prove to establish the offense." *State v. Stephens*, 521 S.W.3d 718, 723 (Tenn. 2017). Next, this court will "analyze all of the evidence admitted at trial in order to

determine whether each of the elements is supported by adequate proof." *Id.* at 724. Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. *Id.* Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

Tennessee Code Annotated section 39-16-503(a)(1) states, in pertinent part:

> (a) It is unlawful for any person, knowing that an investigation or official proceeding is pending or in progress, to:
>
> (1) . . . destroy . . . any record, document or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding[.]

Tenn. Code Ann. § 39-16-503 (2014). Tampering with evidence requires the State to prove beyond a reasonable doubt "timing, action, and intent." *State v. Hawkins*, 406 S.W.3d 121, 132 (Tenn. 2013).

> The "timing" element requires that the act be done only after the defendant forms a belief that an investigation or proceeding is pending or in progress. The "action" element requires alteration, destruction, or concealment. The "intent" element requires that the defendant intended to hinder the investigation or official proceeding by impairing the record's, document's or thing's verity, legibility, or availability as evidence. The "timing" element describes a necessary attendant circumstance to the crime—the State must prove beyond a reasonable doubt that the defendant committed

the act while knowing that an investigation or official proceeding is pending or in progress.

*Id*. (some internal quotation marks omitted).

Tennessee Code Annotated section 39-12-101 states that

(a) [a] person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

(1) [i]ntentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;

(2) [a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

(b) Conduct does not constitute a substantial step under subdivision (a)(3), unless the person's entire course of action is corroborative of the intent to commit the offense.

(c) It is no defense to prosecution for criminal attempt that the offense attempted was actually committed.

Tenn. Code Ann. § 39-12-101 (2014). "[C]riminal attempt is available as a lesser-included offense of any charged offense in every case in which: (1) the charged offense has a requisite intent element; and (2) the proof has fairly raised the completed offense." *State v. Thorpe*, 463 S.W.3d 851, 863 (Tenn. 2015).

Here, Lieutenant Bush and Defendant both agreed that the parking lot behind the building where Defendant was parked was well-known for narcotics trafficking. Lieutenant Bush testified that Defendant was "nervous" and "surprised" at his presence. Lieutenant Bush testified that, when he first looked into Defendant's vehicle, he observed two baggies on Defendant's lap—one with several grams of marijuana and one with several grams of a white powdery substance. Defendant testified that Lieutenant Bush

commented on the drugs in his lap. Lieutenant Bush asked Defendant not to leave while he called for assistance. Minutes later, after Defendant sped away and he and his passengers fled the scene of the crash, officers recovered a baggie with a white powdery residue containing significantly less powder than before.

Any reasonable juror could find that Defendant knew that an investigation into the drugs was pending because Lieutenant Bush commented on the drugs in his lap and asked him not to leave. Moreover, any reasonable juror could conclude that between the time Lieutenant Bush initially observed the baggies and the time of the crash, Defendant destroyed most of the white powdery substance contained in the baggie in an effort to "impair its . . . availability as evidence in the investigation." Thus, the jury could reasonably find the concurrence of timing, action of destruction, and Defendant's intent required for the charged offense of tampering with evidence. It is the jury's purview to determine the credibility of witnesses, and this court will not reweigh the evidence. Because the charge of tampering with evidence has "a requisite intent element" and because the proof in this case "fairly raised the completed offense" of tampering with evidence, criminal attempt was available as a lesser-included offense. *See Thorpe*, 463 S.W.3d at 863. Therefore, because there was sufficient evidence to support the charged offense, there was sufficient evidence to support the conviction of the lesser-included offense of attempted tampering with evidence.

Defendant's argument centers entirely around the missing baggie of marijuana and ignores the baggie with the white powdery residue. Defendant asks this court to determine that removing evidence from a scene of a crime cannot be charged as "tampering with evidence." However, because there is sufficient evidence that Defendant tampered with the baggie containing a white powdery substance, we need not address Defendant's argument on the removal of evidence as it relates to the baggie of marijuana. Defendant is not entitled to relief.

*Jury Instruction on Flight*

Defendant argues that the trial court erred when it instructed the jury on flight because there was no evidence to support that Defendant was "hiding out." Defendant asserts that because he surrendered to law enforcement several days after the incident, he could not have been "hiding out." Defendant contends that, in ruling on the inclusion of the flight instruction, the trial court failed to make a finding on "hiding out."

The State responds that Defendant sped away from the scene until he crashed and then ran away on foot. Although the State agrees that Defendant turned himself in "one or two weeks later," it argues that this "does not negate the fact that he fled the scene and hid to avoid arrest." Moreover, the State asserts that Defendant's admission that he

waited to turn himself in until he had enough money for bond proves he was hiding to avoid arrest. We agree with the State.

Challenges to jury instructions present mixed questions of law and fact; therefore, we review challenged instructions de novo without a presumption of correctness. *State v. Rush*, 50 S.W.3d 424, 427 (Tenn. 2001) (citing *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001)).

"It is well-settled that a defendant has a constitutional right to a complete and correct charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *Dorantes*, 331 S.W.3d at 390(citations omitted). The instruction must provide a "'clear and distinct exposition of the law'" to "satisf[y] a defendant's constitutional right to trial by jury." *State v. Phipps*, 883 S.W.2d 138, 150 (Tenn. Crim. App. 1994) (quoting *State v. McAfee*, 737 S.W.2d 304, 308 (Tenn. Crim. App. 1987)). Further, the trial court "must instruct the jury on those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." *State v. Elder*, 982 S.W.2d 871, 876 (Tenn. Crim. App. 1998). "An instruction is 'prejudicially erroneous' when 'it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law.'" *State v. Smith*, 492 S.W.3d 224, 245 (Tenn. 2016) (quoting *Vann*, 976 S.W.2d at 101).

"In order for a trial court to charge the jury on flight as an inference of guilt, there must be sufficient evidence to support such instruction." *State v. Berry*, 141 S.W.3d 549, 588 (Tenn. 2004). There is sufficient evidence to justify a flight instruction when the State has established "both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or a leaving of the community for parts unknown." *State v. Whittenmeir*, 725 S.W.2d 686, 688 (Tenn. Crim. App. 1986) (internal quotation marks omitted). The State may satisfy the subsequent hiding out, evasion, or concealment requirement by presenting proof from which a jury might infer that the defendant committed such acts. *State v. Scotty Dale Staggs*, No. M2011-01675-CCA-R3-CD, 2013 WL 2722286, at *18 (Tenn. Crim. App. June 12, 2013) (citing *State v. Terrance Wilks*, No. W1999-00279-CCA-R3-CD, 1999 WL 1097832, at *4 (Tenn. Crim. App. Nov. 22, 1999)). This court has previously explained that

> "[t]he law makes no nice or refined distinction as to the manner or method
> of a flight; it may be open, or it may be a hurried or concealed departure, or
> it may be a concealment within the jurisdiction."

*Whittenmeir*, 725 S.W.2d at 688 (quoting *Rogers v. State*, 455 S.W.2d 182, 187 (Tenn. Crim. App. 1970)). It is proper for the trial court to instruct the jury on flight when the

issue has been raised by the proof. *See State v. Kendricks*, 947 S.W.2d 875, 885-86 (Tenn. Crim. App. 1996).

Here, the trial court instructed the jury on flight as follows:

The flight of a person accused of a crime is a circumstance which, when considered with all the facts of the case, may justify an inference of guilt. Flight is the voluntary withdrawal of oneself for the purpose of evading arrest or prosecution for the crime charged. Whether the evidence presented proves beyond a reasonable doubt that the defendant fled is a question for your determination.

The law makes no precise distinction as to the manner or method of flight; it may be open, or it may be a hurried or concealed departure, or it may be a concealment within the jurisdiction. However, it takes both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or a leaving of the community for parts unknown, to constitute flight.

If flight is proved, the fact of flight alone does not allow you to find that the defendant is guilty of the crime alleged. However, since flight by a defendant may be caused by a consciousness of guilt, you may consider the fact of flight, if flight is so proven, together with all of the other evidence when you decide the guilt or innocence of the defendant. On the other hand, an entirely innocent person may take flight and such flight may be explained by proof offered, or by the facts and circumstances of the case.

Whether there was flight by the defendant, the reasons for it, and the weight to be given to it, are questions for you to determine.

In *State v. Richardson*, the defendant voluntarily turned himself in to law enforcement five days after he shot and killed a victim. 995 S.W.2d 119, 124 (Tenn. Crim. App. 1998). The defendant argued that because he turned himself in voluntarily, the trial court's jury instruction on flight was unwarranted. *Id*. at 129. This court held that the flight instruction was proper and did not unduly prejudice the defendant, stating:

the flight instruction pointed out to the jury that innocent persons may take flight, and it was up to the jury to determine whether there was flight, the reasons for the flight, and the weight to be given to it. Just as the instruction allowed an inference of guilt from flight, it also instructed that

the evidence, facts, and circumstances may show that an innocent person may take flight.

*Id*.

In the same way, we find that the jury instruction on flight was proper even though Defendant turned himself in to police "one to two weeks after" the incident. Defendant fled the scene of the accident, knowing that an officer saw him in possession of drugs. He testified that he fled because he feared going back to prison and wanted to make sure he had enough money for bond before turning himself in. The trial court's instruction included that an innocent person may take flight and stated that "whether there was flight by [Defendant], the reasons for it, and the weight to be given to it, are questions for [the jury] to determine." Thus, the jury instruction on flight was proper and did not unduly prejudice Defendant. Defendant is not entitled to relief.

## Conclusion

After reviewing the facts and applicable case law, we affirm the trial court's judgments.

_____
ROBERT L. HOLLOWAY, JR., JUDGE