# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## DECEMBER SESSION, 1998

FILED

July 13, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 03C01-9712-CR-00524 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | SULLIVAN COUNTY |
| VS. | ) | |
| | ) | HON. PHYLLIS H. MILLER |
| ROGER MORRIS GARDNER, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Direct Appeal - Range II Multiple |
| | ) | Offender) |

FOR THE APPELLANT:

GALE K. FLANARY
Assistant Public Defender
2nd Judicial District
P. O. Box 839
Blountville, TN  37617

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

TODD R. KELLEY
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN  37243

GREELEY WELLS
District Attorney General

BARRY STAUBUS
LISA CROCKETT
Assistant Attorney General
P. O. Box 526
Blountville, TN  37617

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

On September 30, 1997, a Sullivan County jury convicted Appellant Roger Morris Gardner of one count of attempted aggravated kidnapping. After a sentencing hearing on November 18, 1997, the trial court sentenced Appellant as a Range II multiple offender to eight years in the Tennessee Department of Correction. Appellant challenges his conviction, raising the following issues:

1) whether the evidence was sufficient to support his conviction;
2) whether the trial court should have granted a mistrial because the jurors may have seen Appellant in the custody of some bailiffs during a recess in the trial;
3) whether the trial court properly instructed the jury on flight;
4) whether the trial court properly instructed the jury on admissions against interest; and
5) whether Appellant's right to a speedy trial was violated.

After a review of the record, we affirm the judgment of the trial court.

## I. FACTS

Beth Davidson testified that on December 5, 1996, she was working as a desk clerk at the Westside Inn in Kingsport, Tennessee. Shortly after 12:30 a.m., Appellant came in the front door and asked to use the telephone to call for a ride home. Appellant then used the telephone and sat down on a couch when he was finished.

Davidson testified that after Appellant sat down on the couch, she went into the bathroom to hang up a broom. When Davidson attempted to leave the bathroom, Appellant approached the doorway and put up his hands to block

Davidson's way out. When Davidson tried to go past Appellant, he grabbed both of her arms and held them in a tight grip. After a brief struggle, Davidson fell to her knees, and Appellant fell on top of her. Appellant then grabbed one of Davidson's arms and placed one of his hands over Davidson's mouth and pressed "very hard." Davidson then "kicked and fought" and managed to crawl out from under Appellant after a struggle which lasted between three and four minutes. Davidson testified that during this struggle in the bathroom, she sustained a cut to her hand, bruises to her knees, and muscle sprains in her neck and back.

Davidson testified that after she crawled out from under Appellant, she went to the telephone by the front counter and called 9-1-1. Appellant then picked up his hat and jacket from off the couch and left through a side door.

Davidson testified that sometime later that night, the police brought Appellant to the scene, and she identified him as the man who had attacked her.

Officer Joe Graham of the Kingsport Police Department testified that at approximately 1:44 a.m. on December 5, 1996, he responded to a call at the Westside Inn. After Davidson related the events that had just occurred, Graham went to the phone registry that recorded outgoing calls in order to determine who Davidson's assailant had called. Graham then called the last recorded phone number and received information that Appellant had dialed that number. Graham then put out a BOLO (be on the lookout) for Appellant. Graham testified that shortly thereafter, he showed Davidson a photographic line-up, and she

immediately identified the photograph of Appellant as the man who had attacked her.

Graham testified that Appellant was subsequently apprehended and brought to the Westside Inn. The police officers then asked Appellant to get out and stand by the side of the police car. Davidson then identified Appellant as her attacker.

Officer David Samples of the Kingsport Police Department testified that after receiving information from Officer Graham on December 5, 1996, he located Appellant at a house in Kingsport. When Samples asked Appellant if he had been to the Westside Inn on that date, Appellant initially denied being there. When Samples told Appellant that he matched the description of a subject who had been at that location, Appellant admitted that he had been at the Westside Inn to use the telephone.

## II. SUFFICIENCY OF THE EVIDENCE

Appellant contends that the evidence was insufficient to support his conviction. When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639

S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Finally, Rule 13(e) of the Tennessee Rules of Appellate Procedure provides, "findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact beyond a reasonable doubt."

Under Tennessee law, false imprisonment occurs when one person "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Tenn Code Ann. § 39-13-302(a) (1997). False imprisonment becomes aggravated kidnapping when, among other things, the victim suffers bodily injury. Tenn Code Ann. § 39-13-304(a)(4) (1997). "A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to to cause a result that is an

-5-

element of the offense, and believes the conduct will cause the result without further conduct on the person's part." Tenn. Code Ann. § 39-12-101(a)(2) (1997).

Initially, Appellant contends that the evidence was insufficient because there was no proof that Davidson sustained bodily injury during the incident in the bathroom. However, the cut, bruises, and muscle sprains sustained by Davidson during her struggle with Appellant in the bathroom clearly fit the definition of "bodily injury." See Tenn. Code Ann. § 39-11-106(2) (1997) ("'Bodily injury' includes a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty."). Contrary to Appellant's assertions, there is absolutely nothing in the statutory definition that requires the bruising to be "extensive" in order to qualify as bodily injury. Further, Appellant's claim that Davidson cut her hand on a piece of wood, by the front desk rather than in the bathroom is not supported by the record. Appellant is correct that the record indicates that there was no blood in the bathroom itself and that there was a piece of broken wood by the front desk. However, there is no proof in the record that Davidson actually cut her hand on the piece of wood and in fact, Davidson specifically testified that her hand was cut while she was in the bathroom.

Second, Appellant contends that the evidence was insufficient because there was no proof that he confined Davidson "unlawfully" as defined by statute. The definition of "unlawful" as used in the kidnapping and false imprisonment statutes means "accomplished by force, threat or fraud." Tenn. Code Ann. § 39-13-301(2) (1997). Here, the State introduced proof that when Davidson attempted to leave the bathroom, Appellant put up his hands so that Davidson

could not get out, that Appellant grabbed both of Davidson's arms when she tried to leave, and that Appellant grabbed one of Davidson's arms and placed one of his hands over Davidson's mouth and pressed "very hard" while they were on the floor. This conduct by Appellant clearly qualifies as force.

Third, Appellant contends that the evidence was insufficient because it failed to establish that he "substantially interfered" with Davidson's liberty. Assuming arguendo that the facts of this case did not constitute a "substantial interference" with Davidson's liberty, the evidence was still sufficient to support a conviction for attempted aggravated kidnapping. Essentially, Appellant's argument amounts to an assertion that because Appellant did not actually complete the offense of aggravated kidnapping by substantially interfering with Davidson's liberty, he cannot be guilty of attempted aggravated kidnapping. However, as previously noted, "[a] person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part." Tenn. Code Ann. § 39-12-101(a)(2) (1997). Thus, the State was required to prove that Appellant acted with intent to knowingly confine Davidson unlawfully so as to substantially interfere with her liberty, believing that his conduct would cause the result without further conduct on his part. The evidence that Appellant held out his hands to block Davidson's exit from the bathroom, that Appellant initially grabbed both of Davidson's arms, and that Appellant subsequently grabbed one of Davidson's arms and covered her mouth clearly supports the jury's conclusion that Appellant grabbed and held Davidson with the intent of confining her unlawfully in a way

that substantially interfered with her liberty and that Appellant believed that he would accomplish his objective without further conduct on his part.

Finally, Appellant contends that the evidence was insufficient because the facts indicate that the incident in question was an accident caused by Davidson's unreasonable panicked reaction to Appellant's drunken attempt to use the bathroom. Essentially, Appellant is asking this Court to reconsider the evidence and substitute a verdict of not guilty in place of the verdict found by the jury. That is not our function. Instead, we conclude that when the evidence in this case is viewed in the light most favorable to the State, a rational jury could find beyond a reasonable doubt that Appellant attempted to commit the offense of aggravated kidnapping. This issue has no merit.

### III. MOTION FOR A MISTRIAL

Appellant contends that the trial court erred when it denied his motion for a mistrial. Specifically, Appellant claims that the trial court should have declared a mistrial because one or more jurors may have seen him in the custody of some bailiffs during a recess in the trial.

During a hearing on his motion, Appellant testified that while he was being brought down a hallway by three bailiffs during a recess, a constable opened the door to the jury room from the inside. Appellant testified that although he did not know whether any of the jurors saw him, they might have been able to get a "brief glimpse" of him. Appellant also testified that during this occurrence, he was wearing street clothes, he was not shackled or handcuffed, and he was not

physically touched by the bailiffs. The trial court then gave Appellant the opportunity to change shirts so that any jurors who only saw his clothing would not be able to identify him as the man who had been with the bailiffs. Appellant then changed into a shirt made out of different material. The trial court subsequently denied the motion for a mistrial because there was no evidence that any of the jurors had actually seen Appellant and because Appellant would not have been prejudiced even if the jury had seen him.

The decision of whether to grant a mistrial is within the sound discretion of the trial court. State v. McKinney, 929 S.W.2d 404, 405 (Tenn. Crim. App. 1996). This Court will not disturb that decision absent a finding of abuse of discretion. State v. Adkins, 786 S.W.2d 642, 644 (Tenn. 1990). "Generally, a mistrial will be declared in a criminal case only when there is a 'manifest necessity' requiring such action by the trial judge." State v. Millbrooks, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991). There was no "manifest necessity" for a mistrial in this case. There was absolutely no evidence that any member of the jury actually saw Appellant during the occurrence in question. Further, the fact that Appellant was dressed in street clothes and was not handcuffed, shackled, or physically touched by the bailiffs supports the trial court's conclusion that even if Appellant had been seen by the jury, he would not have been prejudiced by it. Under these circumstances, we hold that the trial court did not abuse its discretion when it denied the motion for a mistrial. This issue has no merit.

## IV. INSTRUCTION ABOUT FLIGHT

Appellant contends that the trial court erred when it instructed the jury on flight. The State concedes that the trial court erred when it gave this instruction; however, the State contends that the error was harmless.

The record indicates that during its charge to the jury, the trial court gave the following instruction on flight:

> The flight of a person accused of a crime is a circumstance which, when considered together with all of the facts of the case, may justify an inference of guilt. Flight is the voluntary withdrawal of one's self for the purpose of evading arrest or prosecution for the crimes charged. Whether the evidence presented proves beyond a reasonable doubt that the defendant fled is a question for your determination.
>
> The law makes no nice or refined distinction as to the manner or method of a flight; it may be open, or it may be a hurried or concealed departure, or it may be a concealment within the jurisdiction. However, it takes both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or a leaving of the community for parts unknown, to constitute flight.
>
> If flight is proved, the fact of flight alone does not allow you to find that the defendant is guilty of the crime alleged. However, since flight by a defendant may be caused by a consciousness of guilt, you may consider the fact of flight, if flight is so proven, together with all of the other evidence when you decide the guilt or innocence of the defendant. On the other hand, an entirely innocent person may take flight and such flight may be explained by proof offered, or by the facts and circumstances of the case.
>
> Whether there was flight by the defendant, the reasons for it, and the weight to be given to it, are questions for you to determine.[1]

In <u>Rogers v. State</u>, 2 Tenn. Crim. App. 491, 502, 455 S.W.2d 182, 187 (1970), this Court set out a two-prong test for determining whether the facts of a case were indicative of flight:

> The law makes no nice or refined distinction as to the manner or method of a flight; it may be open, or it may be a hurried or concealed departure, or it may be concealment within the jurisdiction. However, it takes both a

---

[1] This instruction is identical to the instruction on flight contained in the Tennessee Pattern Jury Instructions. <u>See</u> T.P.I.—Crim. § 42.18 (4th ed. 1995).

leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or a leaving of the community for parts unknown, to constitute flight.

We agree with Appellant that under this test, an instruction on flight was not warranted. While there was evidence that Appellant left the Westside Inn immediately after the events in question, there was no evidence of any "subsequent hiding out, evasion, or concealment in the community, or a leaving of the community for parts unknown." Thus, the trial court erred when it gave this instruction. However, we agree with the State that this was harmless error. The trial court instructed the jury that whether Appellant fled was a question solely for their decision, that they need not infer flight, and that flight alone was insufficient to prove guilt. This, together with the overwhelming proof of Appellant's guilt, renders any error as to the flight instruction harmless. See State v. Smith, 893 S.W.2d 908, 918 (Tenn. 1994); State v. Whittenmeir, 725 S.W.2d 686, 688–89 (Tenn. Crim. App. 1986) see also Tenn. R. App. P. 36(b). This issue has no merit.

## V. INSTRUCTION ON ADMISSIONS AGAINST INTEREST

Appellant contends that the trial court erred when it gave the jury an instruction about admissions against interest.[2] This instruction was as follows:

Evidence has been introduced in this trial of a statement or statements by the defendant made outside the trial, to show an admission against interest. An admission against interest is a statement by the defendant which acknowledges the existence or truth of some fact necessary to be proven to establish the guilt of the defendant or which

[2]We note that Appellant does not claim that his statement to Officer Samples about being at the Westside Inn was inadmissible hearsay. Indeed, the statement is clearly admissible under Rule 803(1.2) of the Tennessee Rules of Evidence as an admission by a party. Rather, Appellant merely contends that the jury instruction about admissions against interest was not warranted in this case.

tends to show guilt of the defendant or is evidence of some material fact, but not amounting to a confession.

While this evidence has been received, it remains your duty to decide if in fact such statement was ever made. If you believe a statement was not made by the defendant, you should not consider it. If you decide the statement was made by the defendant, you must judge the truth of the fact stated. In so determining, consider the circumstances under which the statement was made. Also consider whether any of the other evidence before you tends to contradict the statement in whole or in part. You must not, however, arbitrarily disregard any part of any statement, but rather should consider all of any statement you believe was made and is true. You are the sole judge of what weight should be given such statement. If you decide a statement was made you should consider it with all the other evidence in the case in determining the defendant's guilt or innocence.[3]

In Helton v. State, 547 S.W.2d 564 (Tenn. 1977), the Tennessee Supreme Court set forth a definition for admissions against interest. The Supreme Court stated:

The distinction between an admission and a confession is blurred. Generally, however, a confession is a statement by the accused that he engaged in conduct which constitutes a crime. . . . An admission is an acknowledgment by the accused of certain facts which tend together with other facts, to establish his guilt; while a confession is an acknowledgement of guilt itself. An admission, then, is something less than a confession and, unlike a confession, . . . an admission is not sufficient in itself to support a conviction.

Id. at 567 (citation and internal quotations omitted); see also State v. Kyger, 787 S.W.2d 13, 23 n.2 (Tenn. Crim. App. 1989).

Officer Samples testified that when he located Appellant on December 5, 1996, he told Appellant that he wanted to talk to him about the incident that occurred at the Westside Inn. Appellant then denied being at the Westside Inn and said that he did not have any reason to be at that location. When Samples then confronted Appellant with the fact that he matched the description of a subject who had used the telephone at the Westside Inn, Appellant admitted that

_____

[3]This instruction is identical to the instruction on admissions against interest contained in the Tennessee Pattern Jury Instructions. See T.P.I.—Crim. § 42.11(a) (4th ed. 1995).

he had been at that location and had used the telephone. We conclude that Appellant's statement that he had used the telephone at the Westside Inn, considered together with Davidson's testimony that her assailant had used the telephone shortly before attacking her and Appellant's initial denial that he had been to the Westside Inn, is evidence that tends to establish guilt. Thus, the statement was an admission against interest.[4] See generally State v. Antonio George White, No. 775, 1987 WL 25166, at *1 (Tenn. Crim. App., Knoxville, Dec. 1, 1987) (stating that defendant's statement denying involvement in the crime but admitting being at the crime scene with another perpetrator was an admission under Helton). Therefore, we conclude that the trial court properly gave the instruction on admissions against interest. Further, the trial court's instruction clearly stated that it was the jury's responsibility to determine whether Appellant had made any admission and if he had, to determine whether the statements were entitled to any weight. This, together with the overwhelming proof of Appellant's guilt, convinces us that any error in giving the instruction on admissions against interest was, at worst, harmless. See Tenn. R. App. P. 36(b).

This issue has no merit.

## V. RIGHT TO A SPEEDY TRIAL

Appellant contends that the trial court erred when it failed to dismiss the indictment on the basis that Appellant's right to a speedy trial had been violated.

---

[4]We note that in order to be considered an admission against interest under the Helton standard, the statement must only contain an "acknowledgement by the accused of certain facts which tend together with other facts, to establish his guilt." 547 S.W.2d at 567. There is no requirement, such as there is for the "statement against interest" exception to the hearsay rule, that the statement must be against the declarant's pecuniary or propriety interest or must tend to subject the declarant to civil or criminal liability at the time the statement is made. See Tenn. R. Evid. 804(b)(3).

The United States and Tennessee Constitutions guarantee the criminal defendant the right to a speedy trial. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; State v. Utley, 956 S.W.2d 489, 492 (Tenn. 1997). The right to a speedy trial is also statutory in Tennessee. See Tenn. Code Ann. § 40-14-101 (1997). In addition, the Tennessee Rules of Criminal Procedure provide for the dismissal of an indictment, presentment, information or criminal complaint "[i]f there is unnecessary delay in presenting the charge to a grand jury against a defendant who has been held to answer to the trial court, or if there is unnecessary delay in bringing a defendant to trial . . . ." Tenn. R. Crim. P. 48(b).

When an accused seeks the dismissal of a prosecution based upon the denial of the constitutional right to a speedy trial, the accused must establish a period of delay that is "presumptively prejudicial." State v. Jefferson, 938 S.W.2d 1, 12 (Tenn. Crim. App. 1996) (citing Doggett v. United States, 505 U.S. 647, 651, 112 S.Ct. 2686, 2690, 120 L.Ed.2d 520 (1992)); Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). The length of the delay is dependent upon the peculiar circumstances of each case, and the delay that can be tolerated for "an ordinary street crime" is generally much less than for a serious, complex felony charge. Barker, 407 U.S. at 530–31, 92 S.Ct. at 2193. A delay of one year or longer marks the point at which courts deem the delay unreasonable enough to trigger further inquiry. Utley, 956 S.W.2d at 494; Doggett, 505 U.S. at 652, n.1, 112 S.Ct. at 2691, n.1. If this threshold is crossed, a balancing test determines the merits of the speedy trial issue. In State v. Bishop, 493 S.W.2d 81, 83–85 (Tenn. 1973), our Supreme Court recognized and adopted the balancing test set forth in Barker in which four factors must be balanced. The factors are (1) the length of the delay, (2) the reasons for the

-14-

delay, (3) the accused's assertion of the right to speedy trial, and (4) the prejudice resulting from the delay. <u>Barker</u>, 407 U.S. at 531, 92 S.Ct. at 2192; <u>Bishop</u>, 493 S.W.2d at 83–84.

In this case, Appellant was arrested and charged on December 5, 1996, was indicted on January 30, 1997, asserted his right to a speedy trial on July 25, 1997, and was tried on September 29–30, 1997. Because the ten month period of delay between Appellant's arrest/charge and trial was less than one year, the delay was not "presumptively prejudicial" within the meaning of <u>Barker</u>. Therefore, we need not address the remaining factors of the <u>Barker</u> test. <u>See</u> <u>Utley</u>, 956 S.W.2d at 494. However, it is worth noting that in addition to failing to show that the period of delay in bringing him to trial was "presumptively prejudicial," Appellant has failed to identify any prejudice that he suffered because of the delay. Under these circumstances, we hold that Appellant's right to a speedy trial was not violated under the United States and Tennessee Constitutions. This issue has no merit.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE

CONCUR:

_____
DAVID G. HAYES, JUDGE

_____
JAMES CURWOOD WITT, JR., JUDGE

-15-