IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 22, 2010


**STATE OF TENNESSEE v. SHAWN SIMMONS**


**Appeal from the Circuit Court for Lincoln County**
**No. S0800082     Robert Crigler, Judge**

───────────────

**No. M2009-01362-CCA-R3-CD - Filed September 23, 2010**

───────────────


Appellant, Shawn Simmons, appeals from his conviction for first degree murder in Lincoln County. Appellant argues that: (1) the evidence was insufficient to support the conviction; (2) the trial court erred by instructing the jury on flight; and (3) the trial court improperly ruled that the State could use prior convictions to impeach Appellant's testimony in violation of Tennessee Rule of Evidence 609. After a thorough review of the record, we determine that the evidence was sufficient to support the conviction. Further, we determine that the trial court properly instructed the jury on flight where the evidence supported such an instruction and that the trial court properly ruled that the State could use Appellant's prior convictions for impeachment if he chose to testify. Accordingly, the judgment of the trial court is affirmed.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Andrew Jackson Dearing, III, Shelbyville, Tennessee, for the appellant, Shawn Simmons.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsay Paduch Stempel, Assistant Attorney General; Charles Crawford, District Attorney General, and Ann L. Filer and Hollyn Eubanks, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

On February 3, 2008, a group of friends and relatives planned to gather at the home of Keith and Jana Buchanan in Fayetteville, Tennessee to watch the Super Bowl game. Rodney Howard, Mr. Buchanan's half-brother, Richard Askins, James Battle, Shevonta Love, and Stephen Whitaker all planned to watch the game at the Buchanan residence. Early in the afternoon, the partygoers were sitting in the house when Appellant and Angie Hill walked into the house. Ms. Hill is the sister of Mr. Buchanan and Mr. Howard. Appellant walked across the living room and asked Mr. Whitaker to see him outside. Mr. Whitaker followed Appellant out of the house. Mr. Whitaker came back shortly thereafter, and Appellant left.

Mr. Buchanan was agitated that Appellant would walk into their house without acknowledging either him or his wife. Soon thereafter, Appellant walked back into the house, telling Mr. Buchanan that he had "disrespected" his family for the last time. Appellant added that Mr. Buchanan was no longer welcome in his home. Appellant told Mr. Buchanan, "I got you" before he left the residence.

At that point, most of the people at the party left to go home and take showers prior to the Super Bowl game. After the game started, Mrs. Buchanan informed Mr. Buchanan that his sister called to tell them that Appellant was beating her.

The two brothers left the house, along with the three other men, in Mr. Howard's red Cadillac with twenty-two inch rims. The men left unarmed. On the way to Ms. Hill's house, they spotted Ms. Hill and her truck on the side of Hedgemont Avenue. Appellant was standing next to Ms. Hill's truck, talking to her.

When they got close to the scene, Mr. Howard threw the car in park and got out. Mr. Howard threw his hands up in the air, demanding to know what was going on. They all wanted to know what was going on with Appellant and Ms. Hill. Mr. Buchanan also exited the vehicle and went around towards Appellant. At that time, a shot was fired that hit Mr. Buchanan. Ms. Hill exclaimed, "I can't believe you shot my brother, Shawn!" Mr. Buchanan was placed back in the car and driven to the hospital where he later died from a gunshot wound to the upper torso.

A witness living nearby called 911 and reported the incident. Police were dispatched to the area and witnessed Appellant walking down Wilson Parkway, about 250 yards from

the crime scene. Appellant began to walk faster when he saw the police and was seen lobbing an object onto the top of a building. Appellant was wearing a glove on his left hand and holding a glove in his right hand.

Appellant was subsequently arrested. When the area around the building was searched, officers located a .38 caliber revolver, one spent casing, and one unspent casing.

During the investigation, police located an empty gun holster at the home of Ms. Hill and a fanny pack that held shells similar to those used in the shooting. Ms. Hill had not given Appellant permission to use her weapon. Forensic tests determined that the gun found near the scene fired the shot that killed Mr. Buchanan. Additionally, Appellant's shirt indicated the presence of gunshot primer residue.

Appellant was indicted by the Lincoln County Grand Jury for first degree murder. He was convicted by a jury and sentenced to life in prison. The sentence was ordered to run consecutively to "all unexpired sentences, including Maury Co. # 7847."

After the denial of a motion for new trial, Appellant filed a timely notice of appeal. On appeal, he challenges his conviction, the trial court's instruction on flight, and the trial court's decision to allow the State to impeach his testimony with prior convictions.

*Sufficiency of the Evidence*

On appeal, Appellant argues that the evidence was insufficient to support the conviction for first degree murder. Specifically, Appellant complains that the evidence is "highly circumstantial" and does not support a finding of premeditation. The State, on the other hand, argues that there was ample evidence of premeditation and that the evidence supported the conviction.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the

accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S .W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from reweighing or reevaluating the evidence when considering the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

First degree murder is described as:

(1) A premeditated and intentional killing of another;

(2) A killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse, aggravated child neglect or aircraft piracy; or . . . .

T.C.A. § 39-13-202(a). Tennessee Code Annotated section 39-13-202(d) provides that:

"[P]remeditation" is an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

An intentional act requires that the person have the desire to engage in the conduct or cause the result. T.C.A. § 39-11-106(a)(18). Whether the evidence was sufficient depends entirely on whether the State was able to establish beyond a reasonable doubt the element of premeditation. *See State v. Sims*, 45 S.W.3d 1, 7 (Tenn. 2001); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999). Whether premeditation is present is a question of fact for the jury, and it may be inferred from the circumstances surrounding the killing. *State v. Young*, 196 S.W.3d

85, 108 (Tenn. 2006); *see also State v. Suttles*, 30 S.W.3d 252, 261 (Tenn. 2000); *State v. Pike*, 978 S.W.2d 904, 914 (Tenn. 1998).

Premeditation may be proved by circumstantial evidence. *See, e .g., State v. Brown*, 836 S.W.2d 530, 541-42 (Tenn. 1992). Our supreme court has identified a number of circumstances from which the jury may infer premeditation: (1) the use of a deadly weapon upon an unarmed victim; (2) the particular cruelty of the killing; (3) the defendant's threats or declarations of intent to kill; (4) the defendant's procurement of a weapon; (5) any preparations to conceal the crime undertaken before the crime is committed; (6) destruction or secretion of evidence of the killing; and (7) a defendant's calmness immediately after the killing. *See State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997); *Pike*, 978 S.W.2d at 914-15. This list, however, is not exhaustive and serves only to demonstrate that premeditation may be established by any evidence from which the jury may infer that the killing was done "after the exercise of reflection and judgment." T.C.A. § 39-13-202(d); *see Pike*, 978 S.W.2d at 914-15; *Bland*, 958 S.W.2d at 660.

One learned treatise states that premeditation may be inferred from events that occur before and at the time of the killing:

> Three categories of evidence are important for [the] purpose [of inferring premeditation]: (1) facts about how and what the defendant did prior to the actual killing which show he was engaged in activity directed toward the killing, that is, planning activity; (2) facts about the defendant's prior relationship and conduct with the victim from which motive may be inferred; and (3) facts about the nature of the killing from which it may be inferred that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design.

2 Wayne R. LaFave, *Substantive Criminal Law* § 14.7(a) (2d ed. 2003).

In the case at hand, the jury concluded that Appellant acted with premeditation when shooting Mr. Buchanan. Several of the circumstances listed by our supreme court from which a trier of fact can infer premeditation were present in the facts presented to the jury. Appellant used a deadly weapon, the gun, to kill the unarmed victim. In addition, there was testimony that Appellant told the victim that he had "disrespected" his family for the last time. Appellant also told the victim, "I got you." There was also evidence that immediately after the murder, Appellant walked away from the scene and lobbed something onto the roof of a building. The murder weapon was later found in a location consistent with being thrown

onto the roof of the building and later sliding off. Ms. Hill testified that Appellant did not have her permission to use the gun that was normally stored under her mattress.

As stated above, the trier of fact determines the credibility of the witnesses, any issues of fact, and the weight to be given the evidence presented at trial. *Pruett*, 788 S.W.2d at 561. The jury clearly found that Appellant acted both intentionally and with premeditation when he shot the victim in the torso. We conclude that when the evidence is viewed in a manner that favors the State, there is sufficient evidence to support the jury's verdict with regard to the first degree murder conviction.

*Instruction on Flight*

Next, Appellant complains that the trial court improperly instructed the jury on flight where there was "no evidence" to support the charge. The State disagrees.

"It is well-settled in Tennessee that a defendant has a right to a correct and complete charge of the law so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Farner*, 66 S.W.3d 188, 204 (Tenn. 2001) (citing *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000); *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990)). Accordingly, trial courts have the duty to give "a complete charge of the law applicable to the facts of the case." *State v. Davenport*, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998) (citing *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986)).

In order for a trial court to charge the jury on flight as an inference of guilt, there must be sufficient evidence to support such instruction. There is sufficient evidence to support a jury charge on flight where there is proof of "'both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or leaving the community for parts unknown.'" *State v. Burns*, 979 S.W.2d 279, 289-90 (Tenn. 1998) (quoting *State v. Payton*, 782 S.W.2d 490, 498 (Tenn. Crim. App. 1989)); *see also State v. Franks*, No. W2003-0003-CCA-R3-CD, 2003 WL 22351024, at *3 (Tenn. Crim. App., at Jackson, Oct. 14, 2003), *perm. app. denied,* (Tenn. Jan. 4, 2004). The State can satisfy the subsequent hiding out, evasion, or concealment requirement by introducing evidence from which a jury might infer such action. *State v. Terrance Wilks*, No. W1999-00279-CCA-R3-CD, 1999 WL 1097832, at *4 (Tenn. Crim. App., at Jackson, Nov. 22, 1999) (citing *Payton*, 782 S.W.2d at 490; *Rogers v. State*, 455 S.W.2d 182, 186-87 (Tenn. Crim. App. 1970)). "Any contradictory evidence that serves to rebut the [S]tate's proof merely raises a question for the jury to resolve." *Id.* (citing *Hall v. State*, 584 S.W.2d 819, 821 (Tenn. Crim. App. 1979)). This Court has explained that:

> The law makes no nice or refined distinction as to the manner or method of a flight; it may be open, or it may be a hurried or concealed departure, or it may be a concealment within the jurisdiction.

*State v. Whittenmeir*, 725 S.W.2d 686, 688 (Tenn. Crim. App. 1986) (quoting *Rogers v. State*, 455 S.W.2d 182, 187 (Tenn. Crim. App. 1970)). It is proper for the trial court to instruct the jury on flight when the issue has been raised by the proof. *See State v. Kendricks*, 947 S.W.2d 875, 885-86 (Tenn. Crim. App. 1996) (explaining jury instruction on flight is proper statement of the law).

In the case herein, the trial court instructed the jury that:

> The flight of a person accused of a crime is a circumstance, which, when considered with all the facts of the case, may justify an inference of guilty. Flight is the voluntary withdrawal of oneself for the purpose of evading arrest or prosecution for the crime charged. Whether the evidence presented proves beyond a reasonable doubt that the defendant fled is a question for your determination.

> The law makes no precise distinction as to the manner or method of flight; it may be open, or it may be a hurried or concealed departure, or it may be a concealment within the jurisdiction. However, it takes both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or a leaving of the community for parts unknown, to constitute flight.

> If flight is proved, the fact of flight alone does not allow you to find that the defendant is guilty of the crime alleged. However, since flight by a defendant may be caused by a consciousness of guilty, you may consider the fact of flight, if flight is so proven, together with all of the other evidence when you decide the guilt or innocence of the defendant. On the other hand, an entirely innocent person may take flight and such flight may be explained by proof offered, or by the facts and circumstances of the case.

> Whether there was flight by the defendant, the reasons for it, and the weight to be given to it, are questions for you to determine.

Reviewing the evidence elicited at the trial herein, we note that the evidence clearly shows a leaving of the scene of the difficulty. Despite this fact, the evidence of an evasion from police is somewhat less obvious. There was testimony that Appellant walked away

from police at a brisk pace when they approached and was seen lobbing something onto the top of or over a building. However, soon thereafter, Appellant turned himself in to the authorities relatively close to the scene of the shooting. At trial, the trial court itself noted that it was arguable whether the instruction was justified but indicated that the charge would not be prejudicial to Appellant if it was given in error.

After a review of the evidence, we determine that there was arguably enough evidence of flight to fairly raise the issue for the jury's determination. Regardless, even if it was error for the trial court to give the flight instruction, such error was harmless beyond a reasonable doubt. As noted by our supreme court in *State v. Smith*, 893 S.W.2d 908 (Tenn. 1994):

> Even if an instruction on flight should not have been given, any error is not reversible. The Court instructed the jury that whether the Defendant fled was a question solely for their decision, that they need not infer flight, and that flight alone was insufficient to prove guilt. This, coupled with the overwhelming proof of Defendant's guilt, renders any error as to the flight instruction harmless.

*Id.* at 918.

Like the court in *Smith*, the trial court herein instructed the jury that whether the defendant fled was a question for its determination and that flight alone was not sufficient to find the defendant guilty. The overwhelming proof of Appellant's guilt renders any error in giving the flight instruction harmless. *See also State v. Willie Hall*, No. W2008-01875-CCA-R3-CD, 2010 WL 57190, at *9 (Tenn. Crim. App., at Jackson, Feb. 18, 2010) (determining that even where proof was "tenuous" of defendant's flight, the trial court's decision to give the jury an instruction on flight was harmless in light of the overwhelming evidence of defendant's guilt).

*Admissibility of Prior Convictions*

Lastly, Appellant complains that the trial court erred by ruling that the State could "use prior convictions for impeachment purposes when the convictions were over ten years old" in violation of Rule 609(b) of the Tennessee Rules of Evidence. Appellant specifically notes his prior convictions for criminal simulation, theft under $500, and sale of counterfeit cocaine. The State contends that the trial court did not abuse its discretion.

Under Rule 609 of the Tennessee Rules of Evidence, a witness's credibility may be impeached by prior convictions if certain criteria are met. Among the criteria is that the crime must be punishable by death or at least a one year imprisonment or involve dishonesty

or false statement. Tenn. R. Evid. 609(a)(2). In addition, the conviction must not have occurred more than ten years before the current proceedings, and if it is more than ten years, there must be sufficient notice to the defense for it to be used. Tenn. R. Evid. 609(b). Tennessee Rule of Evidence 609(b) provides in pertinent part:

> Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed between the date of release from confinement and commencement of the action or prosecution; if the witness was not confined, the ten-year period is measured from the date of conviction rather than release. Evidence of a conviction not qualifying under the preceding sentence is admissible if the proponent gives to the adverse party sufficient advance notice . . . and the court determines in the interests of justice that the probative value of the conviction . . . substantially outweighs its prejudicial effect.

*Id.* For purposes of Rule 609(b), in the situation where multiple consecutive sentences are not imposed simultaneously, the "date of release" is the date on which the sentence expires. *State v. Thompson*, 36 S.W.3d 102, 110-11 (Tenn. Crim. App. 2000).

In determining whether the probative value of a prior conviction on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues, a trial court should first analyze whether the impeaching conviction is relevant to the issue of credibility. *See State v. Waller*, 118 S.W.3d 368, 371 (Tenn. 2003). Moreover, "[i]mpeachment cannot be a 'mere ruse' to present to the jury prejudicial or improper testimony." *State v. Jones*, 15 S.W.3d 880, 892 (Tenn. Crim. App. 1999) (quoting *State v. Roy L. Payne*, No. 3C01-9202-CR-45, 1993 WL 20116, at *2 (Tenn. Crim. App., at Knoxville, Feb. 2, 1993)). Finally, upon request, the court must determine that the probative value of the prior conviction on the issue of credibility outweighs its prejudicial effect on substantive issues. Tenn. R. Evid. 609(a)(3). A trial court's decision under this rule will not be overturned absent an abuse of discretion. *State v. Mixon*, 983 S.W.2d 661, 675 (Tenn. 1999).

In the case herein, Appellant complains that the trial court erred in ruling that the State could use three prior convictions Appellant received in 1994 to impeach his testimony should he testify. On April 25, 1994, Appellant was convicted of theft and sentenced to eleven months and twenty-nine days. On June 27, 1994, Appellant was convicted of criminal simulation and received a sentence of one year incarceration. On the same day Appellant received a one year sentenced for selling counterfeit cocaine. These are the three prior convictions Appellant argues erroneously ruled admissible for impeachment purposes. All three of these sentences were concurrent with each other and concurrent with a sixteen year

sentence for attempted first degree murder. This sixteen year sentence was to run consecutively to a six year sentence received on April 25, 1995, for aggravated assault. All of this resulted in an effective sentence of twenty-two years. Appellant was placed on parole on January 10, 2007. As noted previously, in cases such as this with multiple relatively short sentences set to run concurrently with each other and with a significantly lengthier sentence and the convictions carrying the shorter sentences are the ones to be used for impeachment, the "date of release" focuses on the expiration of the shorter sentences rather than actual release from the lengthier sentence. *State v. Thomas*, 36 S.W.3d 102, 110-11 (Tenn. Crim. App. 2000).

In the instant case it appears that the sentences for the impeaching offenses, all from 1994, would have expired within approximately one year of being imposed. Thus, these 1994 sentences are more than ten years from the commencement of the prosecution in this case. However, this does not end the inquiry because Rule 609 allows convictions more than ten years old if a criminal defendant receives sufficient notice to contest the admissibility of such evidence and the "trial court determining in the interests of justice that the probative value of the convictions supported by specific facts and circumstances substantially outweighs its prejudicial effect." Tenn. R. Evid. 609(b).

The State complied with the notice requirements set forth by Tennessee Rule of Evidence 609 with regard to the convictions at issue. The record further reflects that the trial court adequately considered the specific facts and circumstances in ruling that in the interest of justice the probative value of these convictions substantially outweighed any danger of unfair prejudice to Appellant. We agree. The convictions at issue are totally dissimilar to the charge in the instant case and they are all crimes involving dishonesty. We conclude that the trial court did not abuse its discretion in deeming these convictions admissible for impeachment purposes. Moreover, the evidence of Appellant's guilt is overwhelming; and, considering the entire record before us, we would not be able to find, as mandated by Rule 36(b), that the error "more probably than not affected the judgment or would result in prejudice to the judicial process." Accordingly, Appellant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

-10-