IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 11, 2013

## STATE OF TENNESSEE v. RUSSELL VICTOR McCOLLUM

**Appeal from the Criminal Court for Davidson County**
**Nos. 99-C-1660, 2000-C-1757      J. Randall Wyatt, Jr., Judge**

**No. M2012-00941-CCA-R3-CD - Filed March 20, 2014**

The defendant, Russell Victor McCollum, was convicted by a Davidson County Criminal Court jury of three counts of aggravated sexual battery, a Class B felony, and one count of failure to appear, a Class E felony, and was sentenced to an effective term of twenty-two years in the Department of Correction. On appeal, he challenges the sufficiency of the evidence convicting him of aggravated sexual battery and the trial court's consolidating the aggravated sexual battery and failure to appear indictments for trial. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JERRY L. SMITH and CAMILLE R. MCMULLEN, JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the appellant, Russell Victor McCollum.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Brian Holmgren, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

On July 30, 1999, the defendant was indicted for three counts of aggravated sexual battery in case number 99-C-1660. On September 29, 2000, he was indicted, in case number 2000-C-1757, for failure to appear. The State filed a motion on April 27, 2010, for consolidation of the indictments, to which the defendant filed an objection on May 21, 2010. Following a hearing, the trial court granted the State's motion to consolidate the indictments,

and the case proceeded to trial.

## Pretrial Motion Hearing

At the consolidation hearing, Kristen Vanderkooi testified that, in 1999, she worked as a detective in the Sex Crimes Unit of the Metropolitan Nashville Police Department and participated in the investigation of the allegations against the defendant. As part of the investigation, the victim, A.S.,[1] was interviewed by personnel from the Department of Children's Services ("DCS"). The victim disclosed that the defendant molested him on three occasions, twice at David Lipscomb University and once in Williamson County. The victim also stated that the defendant told him "sexually explicit stories" and mentioned engaging in sexual activity with another boy. The defendant also requested that the victim take showers with him on a couple of occasions.

Vanderkooi interviewed the victim's parents, who informed her that they had confronted the defendant prior to calling the police, and the defendant admitted to them that he had engaged in sexual activities with the victim. The victim's parents said that they encouraged the defendant to seek treatment.

Vanderkooi also interviewed the defendant. The defendant confessed to engaging in four separate incidents of sexual activity with A.S., one of which took place in Williamson County. Of the incidents occurring in Davidson County, the defendant told her that one incident occurred outside of the ice skating rink at Centennial Sports Plex and the other two occurred at David Lipscomb University. The defendant told Vanderkooi that one of the incidents at the university occurred in the defendant's car and involved the defendant "fondling the [victim]'s genitals[,]" skin to skin. The defendant stopped when the victim asked him, indicating "[s]ome remorse and some fear of getting caught." The other incident at the university occurred in the defendant's dorm room. During this incident, the defendant admitted that "he was aroused and did not stop when asked" by the victim to stop. The defendant provided Vanderkooi with a written statement outlining the incidents to which he confessed.

Vanderkooi testified that, based on her experience in sex abuse cases, perpetrators of child sex abuse often befriend the victim, provide the victim with gifts, and create scenarios in which they have the opportunity to be alone with the child. Additionally, perpetrators might request for the child to remain silent so that their activities will not be discovered. Vanderkooi stated that her investigation revealed that the defendant engaged in all such behaviors with the victim.

_____

[1] It is the policy of this court to refer to minor victims of sexual assault by their initials only.

Vanderkooi testified that she took out an arrest warrant on the defendant in April 1999, after he confessed. The defendant was indicted in July 1999 and brought into court. While the case was pending, the defendant failed to appear for court in November 1999, and Vanderkooi learned that he had left the jurisdiction. Vanderkooi said that she "spent a lot of time trying to find [the defendant]" and had leads in Pennsylvania and Canada. The defendant was ultimately located in Canada and extradited back to Tennessee in 2009.

In ruling that the indictments against the defendant should be consolidated for trial, the court noted, citing Rogers v. State, 455 S.W.2d 182, 186 (Tenn. Crim. App. 1970), that "evidence of flight is traditionally admissible in a trial against a defendant for another offense because flight 'may bear on the intent, purpose, or consciousness of guilt of accused.'" The court determined that, even though the flight occurred over a year after the incidents, the defendant's flight from prosecution was part of the same common scheme or plan and evidence of such would be admissible in the trial of the aggravated sexual battery charges. The court further found that the probative value of the defendant's failure to appear was greater than the prejudicial effect.

**Trial**

At trial, the victim testified that he was born on February 20, 1988, and that he lived in Brentwood, Tennessee, with his family until he was ten or eleven years old when they moved to Utah. Prior to moving, the victim attended Brentwood Church of Christ, where his father was the minister. When he was about eight or nine years old, the victim met the defendant, who was a college student at David Lipscomb University and attended the victim's church. The victim recalled that the defendant was involved in youth group activities with children at the church.

The victim testified that he began struggling with his grades in the fifth grade and his parents employed the defendant to tutor him. The defendant tutored the victim one to three times a week in the victim's home, and the defendant ate dinner with the family "at least once or twice a week[.]" The victim also saw the defendant at church several times a week. The defendant took the victim to other activities outside of tutoring and church, including a park, batting cages, and the arcade. The defendant also took the victim to visit his college campus on several occasions. For these trips, the defendant would pick the victim up in his green, older model car. The victim explained that there was a lot of camaraderie between him and the defendant at the beginning of their relationship, and the defendant referred to him as his little brother. The defendant also bought the victim candy and small toys.

The victim testified that the first instance of molestation occurred when he and the defendant were in the defendant's car in the parking lot outside the defendant's dormitory

at David Lipscomb University. The defendant reached over into the passenger seat where the victim was sitting and fondled the victim's penis and testicles for one to two minutes. The defendant's hands were under the victim's clothes with direct skin-to-skin contact. When it was over, the defendant asked the victim if he was going to tell his parents. The defendant apologized to the victim and said that it should not have happened.

The victim recalled an occasion when he went to the defendant's dorm room after a little league baseball game. Once there, the defendant wanted the victim to take a shower and offered to shower with him. When the victim refused, the defendant took him to meet friends in other dorm rooms. They returned to the room, and the defendant locked the door and scattered a deck of cards over the floor at the bottom of the door. The defendant told the victim that, if someone came into the room, it would look like they had been building a card castle. The defendant sat on his bed and removed the victim's shirt. He then pulled the victim's pants and underwear halfway down, completely exposing the victim. The defendant began to fondle the victim's penis and testicles with his bare hands. The defendant told the victim that "he had been waiting a long time for this" and did not stop when the victim asked him to. The victim continued to ask the defendant to stop and, about three to five minutes later, he did. The victim pulled up his pants and put his shirt back on and then was allowed to play a video game. After the incident, the defendant was "very distraught" and "very apologetic." The defendant apologized to the victim and repeatedly asked the victim not to tell his parents.

The victim recalled another occasion of molestation that occurred when he and the defendant were in the defendant's car outside of an ice skating rink. The victim was sitting in the passenger seat, and the defendant reached over, unbuckled his seatbelt, and put his hand down the victim's pants. The defendant fondled the victim's penis and testicles with his bare hands. Afterwards, the defendant "seemed very upset and was extremely apologetic and told [the victim] multiple times that that was the last time that something like that was going to happen[.]"

The victim testified that his behavior changed after the last incident and that he was "very persistent" with his mother about not wanting to be tutored anymore. The victim eventually told his mother about the defendant's abuse, and she and the victim's father confronted the defendant. The victim recalled that both of his parents and the defendant were crying by the end of their discussion. After that day, the defendant stopped attending the victim's church, and the victim never saw him again.

The victim's mother testified that she and her family lived in Brentwood during the time period of the offenses against the victim. At that time, her husband was a minister at the Brentwood Church of Christ. Through church, the victim's mother and her family met

the defendant, who was a college student at David Lipscomb University. The victim was in the fourth grade at the time and began having trouble with his grades, so they had the defendant tutor the victim "a couple of times a week" because he and the victim "seemed to have a nice rapport as friends." The defendant often had dinner with the family, and they saw him at church approximately three times a week. The victim's mother noticed that the defendant provided the victim with candy and small gifts. The defendant also attended the victim's baseball games and took the victim on various social outings.

The victim's mother testified that at some point, she noticed a change in the victim's attitude toward the defendant. When she discussed this with the victim, the victim disclosed to her that he had experienced several instances of inappropriate sexual contact by the defendant. The victim's mother immediately called her husband, who was out of town, and he drove home that night. After the victim's father returned, the family met with the defendant at their home and confronted him about the victim's disclosures. The defendant did not deny the allegations and was remorseful and apologized. The victim's mother and father arranged for the defendant to obtain counseling. Asked if she recognized the defendant in court, the victim's mother stated, "I don't know that I'd recognize him. It has been a while."

Kristen Vanderkooi testified similarly as she did at the pretrial hearing. Vanderkooi stated that the case was originally referred to the police department by DCS, which had been contacted by a therapist to whom the defendant had self-reported the abuse. The therapist wrote a letter to DCS on January 29, 1999, which was signed by both the therapist and the defendant.

Vanderkooi testified to her interview of the defendant, and the defendant's admission to "three separate incidents of fondling [the victim] within Davidson County." The defendant relayed that the first incident took place in his car in the parking lot of David Lipscomb University. He told Vanderkooi that he "put his hand in [the victim]'s pants underneath his underwear skin-to-skin and was showing [the victim] different pressure points and places that felt good to be rubbed on his penis and genitals."

The defendant also discussed the incident that took place in his car in the parking lot of Centennial Sports Plex. The defendant said that, while driving to that location, he told the victim "sexually graphic stories . . . and that he put his hand, again, inside the underwear of the child and skin-to-skin and was fondling his penis and genitals." The defendant further relayed a third incident that took place in his dorm room at David Lipscomb University. The defendant stated that, on that occasion, "he took [the victim]'s shirt off, that he pulled his pants and underwear down and that he fondled his penis again skin-to-skin." The defendant told Vanderkooi that, after the first incident, he saw the victim the following day at church

and apologized to him. The defendant handwrote for Vanderkooi "a chronological list of places and sexual acts that occurred."

The victim's father testified that, at the time of the offenses, he worked as a minister in Brentwood. The defendant was a college student who attended the church and developed a brother-type relationship with the victim. The defendant also tutored the victim three or four times a month. The victim's father said that the tutoring sessions took place at their house, and the defendant usually stayed for dinner those nights. The defendant got involved in other activities with the victim, including taking the victim to batting cages and attending the victim's little league baseball games.

The victim's father testified that, in the winter of 1998, he was at a gospel meeting in Alabama when he received a phone call from his wife. He drove home that night and talked to the victim about the incidents that occurred with the defendant. The next day, the defendant came to their home and the victim's father confronted him about the touchings that had taken place with the victim. He asked the defendant if he had touched the victim, and the defendant "put his head down and teared up . . . and he said, yes, that is true." The victim's father told the defendant that the police were going to have to be informed and suggested that the defendant seek counseling. The defendant agreed and said that he wanted to "get help." The victim's father stated that he never saw the defendant again after that day. He identified the defendant in court.

Bernie McEvoy testified that he worked as an assistant district attorney in the Child Sex Abuse Unit of the Davidson County District Attorney's Office in 1999. He handled the prosecution of the case against the defendant, in which the defendant was charged with three counts of aggravated sexual battery. The defendant failed to appear at a scheduled court appearance on November 23, 1999. McEvoy attempted to locate the defendant by, among other things, contacting the Tennessee Bureau of Investigation and the Federal Bureau of Investigation and providing them information about the defendant. He also contacted law enforcement in Pennsylvania because the defendant had family members there. In addition to attempting to locate the defendant, McEvoy obtained an indictment against the defendant for failure to appear on September 29, 2000.

Barbara Wise, a deputy clerk assigned to Division II of the Davidson County Criminal Court, testified that the defendant was indicted in case number 99-C-1660 on July 30, 1999, for three counts of aggravated sexual battery. Following his indictment, the defendant posted bond and was released from custody. The defendant ultimately failed to appear at a scheduled court appearance on November 23, 1999, and a capias was issued for his arrest. Wise stated that the defendant was not served with the capias until August 11, 2009, when he was located in New York. The defendant then appeared in court on the indictments

against him on August 19, 2009.

Following the conclusion of the proof, the jury convicted the defendant of three counts of aggravated sexual battery and one count of failure to appear, as charged in the indictments.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant challenges the sufficiency of the evidence relating to his convictions for aggravated sexual battery. He asserts that the State's proof at trial was "contradictory" and that there was no corroborating physical evidence or eyewitness testimony. In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that

on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

"Aggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim [where] . . . [t]he victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4). "'Sexual contact' includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, . . . if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification[.]" Id. § 39-13-501(6).

Viewed in the light most favorable to the State, the evidence is sufficient to support the defendant's convictions for three counts of aggravated sexual battery. The victim testified about three separate incidents in which the defendant sexually abused him and recalled detail about each incident. During the police investigation into the allegations, the defendant confessed to the offenses, and Vanderkooi testified at trial regarding the defendant's admissions. Vanderkooi testified that the defendant additionally handwrote for her "a chronological list of places and sexual acts that occurred." The victim's parents both testified that the defendant admitted to them that the victim's allegations were true. Moreover, the defendant's consciousness of guilt can reasonably be inferred based on his ten-year flight from the jurisdiction. See Rogers, 455 S.W.2d at 186-87.

The defendant claims that the State failed to present evidence to corroborate the victim's testimony; however, there is no requirement under Tennessee Code Annotated section 39-13-504 that the victim's testimony be corroborated by independent evidence. See State v. Smith, 42 S.W.3d 101, 106 (Tenn. Crim. App. 2000). Even so, the victim's testimony was corroborated by the defendant's own confession. Finally, while the defendant alleges that the witnesses' testimony was contradictory, our review of the transcript did not reveal such contradictions and, even if there were contradictions, such were resolved by the jury as the trier of fact. The evidence is sufficient for a rational trier of fact to find the defendant guilty of three counts of aggravated sexual battery.

## II. Consolidation of Indictments

The defendant also argues that the trial court erred in granting the State's motion to consolidate the indictments for trial over his objection. "Decisions concerning consolidation and severance of offenses pursuant to [Tennessee] Rules of Criminal Procedure 8(b), 13 and 14(b)(1) will be reviewed for an abuse of discretion." State v. Denton, 149 S.W.3d 1, 12 (Tenn. 2004) (citations omitted). "An abuse of discretion in this context implies that the trial court applied an incorrect legal standard or reached a decision against logic or reasoning which caused an injustice to the complaining party." Id.

Tennessee Rule of Criminal Procedure 8(b) provides that "[t]wo or more offenses may be joined in the same indictment, presentment, or information, with each offense stated in a separate count, or consolidated pursuant to Rule 13, if: (1) the offenses constitute parts of a common scheme or plan; or (2) they are of the same or similar character." Tennessee Rule of Criminal Procedure 13(a) provides that "[t]he court may order consolidation for trial of two or more indictments, presentments, or informations if the offenses and all defendants could have been joined in a single indictment, presentment, or information pursuant to Rule 8." Finally, Tennessee Rule of Criminal Procedure 14(b)(1) provides that "[i]f two or more offenses are joined or consolidated for trial pursuant to Rule 8(b), the defendant has the right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible in the trial of the others."

When a defendant contests the State's effort to consolidate offenses, it becomes the State's burden to adduce evidence establishing that consolidation is proper. State v. Toliver, 117 S.W.3d 216, 228 (Tenn. 2003) (citing Spicer v. State, 12 S.W.3d 438, 447 (Tenn. 2000)). In addition, the trial court must hold a hearing and, before it orders consolidation, the trial court

> must conclude from the evidence and arguments presented at the hearing that: (1) the multiple offenses constitute parts of a common scheme or plan; (2) evidence of each offense is relevant to some material issue in the trial of all the other offenses; and (3) the probative value of the evidence of other offenses is not outweighed by the prejudicial effect that admission of the evidence would have on the defendant.

Spicer, 12 S.W.3d at 445 (citations omitted).

There are three categories of common scheme or plan evidence: (1) offenses that reveal a distinctive design or are so similar as to be considered "signature crimes"; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction. State v. Shirley, 6 S.W.3d 243, 248 (Tenn. 1999) (citing Neil P. Cohen et al., Tennessee Law of Evidence § 404.11, at 180 (3d ed. 1995)).

The defendant asserts that the State failed to prove that the offenses were part of a common scheme or plan and that the evidence of one would be admissible in the trial of the others. He claims that the allegations of aggravated sexual battery occurred between January and May of 1998 and the allegation of failure to appear occurred in November 1999, meaning "[t]hese two allegations are not part of any common scheme or plan simply based on the gap in time between them." He further claims that "allowing the same jury to hear proof of allegations of sexual battery and then hear proof of allegations of [f]ailing to

[a]ppear, or 'bail jumping', is extremely prejudicial and unrelated to one[] another."

In ruling that the aggravated sexual battery cases and failure to appear case should be consolidated for trial, the trial court found as follows:

> [E]vidence of flight is traditionally admissible in a trial against a defendant for another offense because flight "may bear on the intent, purpose, or consciousness of guilt of accused." *See* Rogers v. State, 455 S.W.2d 182, 186 (Tenn. Crim. App. 1970). The Court finds that the [d]efendant's flight from prosecution was part of the same common scheme or plan, even though the flight occurred over a year after the alleged incidents. The Court also finds that the evidence of the flight would be admissible in the trial of . . . the aggravated sexual battery charges and that the probative value of this charge is greater than the prejudicial effect.

The trial court's findings reveal that it made the requisite determinations in ruling to consolidate the indictments for trial and did not abuse its discretion. Specifically, the court determined that the defendant's flight from prosecution was part of a common scheme or plan; that evidence of flight would be admissible in the trial of the aggravated sexual battery charges; and the probative value of the flight was not outweighed by the prejudicial effect that admission of the evidence would have on the defendant.

In any event, even if the court erred in consolidating the indictments, such error was harmless because we cannot conclude that it "more probably than not affected the judgment." Toliver, 117 S.W.3d at 231 (citing Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b); Spicer, 12 S.W.3d at 447). "'[T]he line between harmless and prejudicial error is in direct proportion to the degree . . . by which [the] proof exceeds the standard required to convict. . . .'" Spicer, 12 S.W.3d at 447 (quoting Delk v. State, 590 S.W.2d 435, 442 (Tenn. 1979)). "'The more the proof exceeds that which is necessary to support a finding of guilt beyond a reasonable doubt, the less likely it becomes that an error affirmatively affected the outcome of the trial on its merits.'" Toliver, 117 S.W.3d at 231 (quoting State v. Gilliland, 22 S.W.3d 266, 274 (Tenn. 2000)). However, we must focus not simply on the weight of the evidence, but on "the actual basis for the jury's verdict." State v. Rodriguez, 254 S.W.3d 361, 372 (Tenn. 2008).

Here, the evidence supporting the defendant's failure to appear and aggravated sexual battery convictions was overwhelming and uncontested. The proof concerning the failure to appear was that, following his indictment for the aggravated sexual battery charges, the defendant posted bond and was released from custody. He failed to appear at a scheduled court appearance on November 23, 1999, and the court issued a capias for his arrest. He was

subsequently indicted on September 29, 2000, for failure to appear but was not served with the capias until August 11, 2009, when he was apprehended in New York. At trial, the defendant did not contest the facts relating to his failure to appear and does not challenge the sufficiency of that conviction on appeal.

The proof establishing the defendant's guilt for aggravated sexual battery was likewise overwhelming. As noted above, the victim testified in detail about three incidents in which the defendant sexually molested him. Vanderkooi testified at trial that, during the police investigation into the allegations, the defendant confessed to three separate incidents of fondling the victim and wrote out a chronological list identifying the incidents, which was admitted into evidence. In addition, a letter written by the defendant, with the help of his therapist, admitting inappropriate conduct with a child was entered into evidence. The defendant also made admissions to the victim's parents, both of whom testified to such at trial. Under these circumstances, we conclude that, even if the court erred in consolidating the indictments, the error was harmless.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE